## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BEVERLY LEWIS WRIGHT,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | |
| **JOHN E. POTTER,** | : | **Civil No. AMD-02-4181** |
| **Postmaster General,** | | |
| **United States Postal Service,** | : | |
| **Defendant.** | : | |

...oOo...

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

John E. Potter, Postmaster General of the United States Postal Service, defendant herein, by his attorneys, Thomas M. DiBiagio, United States Attorney for the District of Maryland, and John W. Sippel, Jr., Assistant United States Attorney for said District, hereby submits this Memorandum in Support of his Motion to Dismiss or, in the alternative, for Summary Judgment.

## I. INTRODUCTION

This action is brought by Beverly Lewis Wright ("Plaintiff") against her former employer, the United States Postal Service ("Defendant" or "USPS"), pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701 ("Rehabilitation Act").[1] In her Complaint, Plaintiff alleges that Defendant discriminated against her based upon her disability (Multiple Sclerosis) when the USPS failed to provide her with reasonable accommodation for her disability by permitting her to only work two hours per day from February to July 1999, threatened her with arrest, and forced her into disability

---

[1] As will be discussed in greater detail in this memorandum, Plaintiff retired from the Agency on a disability on October 1, 2000. *See* Plaintiff's Complaint, ¶ 4(D).

retirement.  *See* Complaint, ¶¶ 3-4.  Plaintiff seeks, among other things, undetermined monetary damages, reinstatement to USPS employment (if conditions permit), and attorneys' fees and costs. *Id*., ¶ 13.

As discussed more fully below, portions of Plaintiff's Complaint must be dismissed as she failed to exhaust the administrative remedies available to her.  Moreover, even if the Court accepts all of Plaintiff's claims, Plaintiff cannot establish a *prima facie* case under the Rehabilitation Act, prove that she was wrongfully terminated, or show that the USPS failed to provide her with reasonable accommodation.  For these reasons, Plaintiff's Complaint must be dismissed or, in the alternative, judgment entered in favor of Defendant.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Factual Background

Plaintiff started her employment with the USPS in 1984, and worked as a distribution clerk in the Lutherville/Timonium, Maryland Post Office from 1986-2000.  *See* Declaration of Michael J. Orsini ("Orsini Dec."), ¶ 2 and Attachments ("Atts".) 1 and 2, attached hereto as Exhibit 1. Michael Orsini ("Postmaster Orsini") served as the Postmaster (or acting Postmaster) at the Lutherville/Timonium Post Office from 1999 to present, and Mr. Raymond Smith ("Supervisor Smith") was Plaintiff's first line supervisor at all relevant times. *Id.*

Plaintiff suffers from Multiple Sclerosis.  Orsini Dec., ¶ 3.  Although she was not hired with a disability, the USPS has been aware of her condition for a number of years.  *Id*., Atts. 1, 3 and 4. She was able to perform the essential functions of the distribution clerk position until August 1998. *Id*., ¶ 3.

The essential functions of a distribution clerk position are as follows:  (1) breakdown[2] All Purpose Containers ("APCs") and Bulk Mail Containers ("BMCs") of mail and carry the mail to a distribution case (trays of mail weigh 23 to 35 pounds and distance carried is about 5 feet); (2) empty APCs (weighs 209 to 235 pounds, but with mail it could weight 1,000 pounds); (3) empty BMCs (weighs 475 pounds); (4) distribute mail to carrier routes (USPS's goal is 1150 flats or 2270 letters per hour); (5) APCs and BMCs loaded with mail are pushed to various locations; (6) breakdown APC and BMC containers of parcels weighing up to 70 pounds and place them into 48 carrier hampers; (7) spread trays of letters and flats to the 48 letter cases; and (8) push rolling equipment to transport mail.  Orsini Dec., ¶ 4 and Att. 5.  This position required mobility and the ability to move USPS equipment.  *Id.*

On August 5, 1998, Supervisor Smith requested that Plaintiff submit to a fitness for duty ("FFD") exam because "she is and has been stricken with m/s [Multiple Sclerosis] [and] [h]er condition has progressively gotten worse to the point that she has fallen and now walks with a cane."  Orsini Dec., ¶ 5 and Att. 6.  On August 26, 1998, Marcia Kane, M.D., found Plaintiff fit for light duty and sedentary work.  *Id.*, ¶ 5 and Att. 7.  Dr. Kane recommended that Plaintiff not use machinery and that she be provided a chair with back support.  *Id.*  Defendant accommodated these restrictions and assigned Plaintiff to light duty[3] work involving the return of undeliverable ("nixie")

---

[2]  To "breakdown" means to lift trays filled with mail from the All Purpose Containers and Bulk Mail Containers and place in an area for someone else to sort the mail.  Orsini Dec., ¶ 4.

[3]  "Light duty" is a USPS collective bargaining agreement term referring to a formal reduction in duties allowed by the USPS to employees who sustain non-job-related injuries or illnesses.  Orsini Dec., ¶ 6.  Under Article 13 of the Postal workers' collective bargaining agreement, any USPS employee who is injured off the job and who has at least five years of USPS service is eligible for permanent assignment to light duty.  *Id.*  Light duty is defined by the USPS as a duty requiring less exertion than regular duties.  *Id.*  Light duty assignments are provided at the management's discretion, depending upon the needs of the USPS.  *Id.*  Light duty assignments can be of a

mail. Orsini Dec., ¶ 6. Plaintiff was required to place a stamp on undeliverable mail and check a box to indicate the reason it was undeliverable. *Id*. She was also required to repair torn mail. *Id*. These miscellaneous duties were assigned to Plaintiff pursuant to Article 13 of the applicable collective bargaining agreement but were not part of a funded vacant position. *Id*. Initially, the USPS did not reduce Plaintiff's work hours. *Id*.

In early 1999, the District decided to stop mail processing in the Lutherville/Timonium Post Office. All mail processing machines, such as flat sorter and letter sorter machines, were removed from the Lutherville/Timonium Post Office and the work load at the Post Office dropped off considerably. Orsini Dec., ¶ 7. Consequently, Postmaster Orsini decided to reduce light duty hours and excessed (reassigned) the following employees on the following dates: Paul Cho, Window Clerk (April 1999); Mary Ann Demboski, Mail Processor (March 1999); Gloria Jones, Distribution/Window Clerk (March 1999); Michael Bendos, Distribution Clerk (February 1999). *Id*. Because of her seniority under the applicable collective bargaining agreement, Plaintiff was not excessed. *Id*. The work Plaintiff was previously performing, however, was almost entirely absorbed by clerical employees with down time and her work hours were reduced to two hours per day. *Id*.

Between January and June of 1999, Plaintiff's condition worsened to the point that in June 1999 she was unable to do any productive work for the USPS. Orsini Dec., ¶ 8 and Att. 4. Plaintiff took sick leave for approximately 23 days from February 15, 1999 through March 10, 1999 due to her Multiple Sclerosis. *Id*., ¶ 8 and Att. 8. Upon her return to work, Plaintiff submitted a letter from

---

temporary or permanent nature. *Id*. Light duty requests must be accompanied by a medical certificate giving full evidence of the physical condition of the employee, the need for reassignment, and the ability of the employee to perform other duties. *Id*. Under no circumstances is the USPS required to create work to accommodate employees with non-job-related injuries or illnesses. *Id*.

her physician clearing her for duty.  *Id*.

On April 13, 1999, Supervisor Smith spoke with Plaintiff by phone and told her that he would not be able to provide her with any light duty work for Wednesday, April 14, 1999,  and that she was not to report to work.  *See* Declaration of Raymond E. Smith ("Smith Dec."), attached hereto as Exhibit 2.  She reported to work in spite of Supervisor Smith's notice, thus ignoring the direct order of her supervisor.  *Id*.  When Supervisor Smith approached her about why she was ignoring the notice, she did not provide an explanation.  *Id*.  Supervisor Smith then informed her that she was to leave and if she did not he would have to call the USPS police and have her escorted off of USPS premises.  *Id*.  Plaintiff left without incident and the USPS police were never called.  *Id*.

On June 11, 1999, Plaintiff presented documentation to Supervisor Smith pursuant to the Family Medical Leave Act ("FMLA") requesting leave from June 11, 1999 through January 6, 2000.  Orsini Dec., ¶ 9 and Att. 9.  Supervisor Smith approved the request for FMLA leave.  *Id*.

On June 16, 1999, Plaintiff submitted a request for permanent light duty to the medical unit in Baltimore.  Orsini Dec., ¶ 10.  Postmaster Orsini wrote a memorandum to Dr. Kane, a USPS physician, in which he expressed the following opinion:

> …Beverly Wright is no longer physically fit to work light duty.  I am strongly concerned that due [sic] her suffering from M.S., she can no longer safely be in a Postal Work Environment.  This is a 21,000 square foot building.  There is rolling equipment throughout the building to move mail.  Ms. Wright would have to walk at least 200 feet among the equipment just to get to the rest room.  I have observed times when she can no longer walk unassisted.  She holds on to anything available to keep from falling.  The amount of sedentary work available is minimal, but she is no longer able to even get to that station safely and there is often no work available. I feel she is no longer able to safely operate a motor vehicle, fellow employees have had to lift her legs into the car, for her to go home.  I feel Ms. Wright at this time should accept disability retirement.  I request that you give her a medical update examination to determine her ability to continue to work as a Postal Clerk.  I feel she cannot safely perform any clerk duties in the Postal work environment.  Any assistance you can give will be greatly appreciated.

5

*Id.*, Att. 10.

Dr. Kane found Plaintiff to be totally disabled as of June 16, 1999. Orsini Dec., ¶ 11 and Att. 11. She mandated that Plaintiff "clear" through the medical unit before returning to work. *Id.* Dr. Kane also stated in a duty status report of the same date that Plaintiff must "[h]ave her physician, treating physician, Dr. Thomas Fowler, M.D., complete forms and return (may fax with hard copy to follow) as soon as possible." *Id.* Plaintiff did not challenge Dr. Kane's duty status determination or respond to her requests for further documentation. Orsini Dec., ¶ 11.

Immediately after Dr. Kane's determination that Plaintiff was totally disabled and unfit for duty, Plaintiff was placed on sick leave pending a review by the USPS's Reasonable Accommodation Committee ("RAC"). Orsini Dec., ¶ 12. The RAC is a multi-disciplinary committee composed of eight members, including a representative from operations, personnel, medical, safety, labor relations, injury compensation, a workplace intervention analysis and Postmaster Orsini. *Id.*, Att. 5. The RAC examined Plaintiff's medical documentation, analyzed her essential job functions, and reviewed her nomination form and Official Personnel File ("OPF"). *Id.* The RAC determined that Plaintiff's restrictions were permanent in nature and that she was disabled, but not a "qualified" disabled individual as contemplated by the Rehabilitation Act of 1973. *Id.* In addition, the RAC concluded that Plaintiff could not be accommodated by eliminating non-essential functions of the position (current or potential new position). *Id.* Plaintiff suggested several means of accommodation, such as use of scooter to carry trays of mail and for general mobility, use postal equipment (APC) for stability as pushing them to destination, push parcels on floor with her scooter, use co-worker assistance to get scooter in/out of car, and/or use co-worker assistance in lifting trays of mail. Orsini Dec., ¶ 12 and Att. 5. The RAC determined, however, that the suggested

6

accommodations were not acceptable, as the suggested accommodations would not enable Plaintiff to perform the essential functions of the position of distribution clerk, and any accommodation by co-workers assisting her would entail that co-worker performing the essential functions of Plaintiff's position. *Id*.

On July 7, 1999, Plaintiff applied for disability retirement. Orsini Dec., ¶ 13 and Att. 12. In her application she states that she "became disabled" for her position on June 11, 1999. *Id*. Plaintiff's disability retirement application was approved and became effective on October 1, 2000. Orsini Dec., ¶ 14 and Att. 13.

**B.    Procedural history**

On or about April 9, 1999, Plaintiff contacted an EEO Counselor complaining that she was discriminated against because of her race (black), sex (female) and physical disability (Multiple Sclerosis) when between January 1999 and June 1999 she was ordered to leave her job after only working two hours and forced to use leave to cover the rest of her tour. *See* EEO Counselor's Inquiry Report, attached hereto as Exhibit 3. On or about June 29, 1999, Plaintiff filed a formal EEO Complaint. *See* EEO Complaint of Discrimination in the Postal Service, attached hereto as Exhibit 4. In paragraph 13 of her formal EEO Complaint, Plaintiff identified her claims as "(1) Violation of Civil Rights Act of 1964; (2) Violation of Rehabilitation Act of 1973; (3) Harassment in the work place; (4) Improper use of medical records; (5) Improper and abusive treatment while requesting FMLA; (6) Denial of authorized employment; and (7) Cruel and unusual treatment." *Id*.

The Agency accepted the following issues for investigation:

1.    On February 23, 1999 to July 1999, Plaintiff was only allowed to work two hours per night and forced to use leave to cover the remainder of the tour;

2.    On unspecified dates, Supervisor Smith stayed at her work station and counted every piece of mail processed by her;

7

3.      On April 14, 1999, Plaintiff was threatened with arrest by Supervisor Smith in the presence of another employee and told not to come to work until this matter was resolved;

4.      In March 1999 and July 1999, Plaintiff was forced to submit to fitness for duty examinations;

5.      On May 12, 1999 and May 24, 1999, Plaintiff was forced to go home by Supervisor Laurie Schultz; and

6.      On June 11, 1999, Plaintiff presented documents to the supervisor for the approval of Family and Medical Leave and on June 16, 1999, she received a phone call from Postmaster Mike Orsini ordering her to submit to a fitness for duty examination.

*See* Partial Acceptance/Partial Dismissal of Formal EEO Complaint, attached hereto as Exhibit 5. The issue of whether Plaintiff was only allowed to work 2 hours per night and forced to use leave to cover the remainder of the tour from January 9, 1999 to February 22, 1999 was dismissed, as Plaintiff had not initiated contact with an EEO Counselor within 45 days of the alleged discrimination.  *Id*.  On January19, 2001, the Postal Service issued a Final Agency Decision ("FAD") dismissing Plaintiff's administrative EEO Complaint.  *See* Final Agency Decision, attached hereto as Exhibit 6.  Plaintiff filed an appeal with the EEOC's Office of Federal Operations ("OFO"), and on September 25, 2002, the OFO affirmed the FAD.  *See* EEOC Decision, attached as Exhibit 7.

In her Complaint filed with this Court, Plaintiff presents a claims for discrimination under the Rehabilitation Act, for wrongful termination, and for failure to provide reasonable accommodation.  *See* Complaint, ¶¶ 3, 4(B) and 4(D).

### III. LEGAL STANDARDS

**A.    Motion to dismiss under Rules 12(b)(1) and 12(b)(6).**

When a defendant grounds a motion to dismiss both upon Fed. R. Civ. P. 12(b)(1), for lack of subject-matter jurisdiction, and upon Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, resolution of subject-matter jurisdiction takes precedence over a question of whether a plaintiff has stated a cause of action because without jurisdiction, the court has no power to rule on the validity of a claim. *Verizon Maryland Inc. v. RCN Telecom Services, Inc.*, 232 F. Supp.2d 539, 545 (D. Md. 2002)(Smalkin, J.)(*citing Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)).

In the context of federal employment discrimination, a plaintiff must not only raise allegations in a complaint that were raised in the administrative process, but must also timely meet the requirements for making a discrimination claim. *See Brown v. General Services Admin*., 425 U.S. 820, 832-33 (1976); *Hicks v. Baltimore Gas & Elec. Co.*, 829 F. Supp. 791, 794-795 (D. Md. 1992), *aff'd*, 998 F.2d 1009 (4th Cir. 1993). It well-established that a district court must dismiss an employment discrimination claim if the plaintiff failed to seek EEO counseling within the prescribed time period. *Nealon v. Stone*, 958 F.2d 584, 589-90 (4th Cir. 1992); *Zografov v. V.A. Medical Center*, 779 F.2d 967, 968-69 (4th Cir. 1985).

In addition, when a party contends that the plaintiff's complaint fails to allege facts upon which subject-matter jurisdiction can be found, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Thus, for the instant Rule 12(b)(1) and 12(b)(6) motions, the "moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter

of law." *Richmond, Fredericksburg, & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th

Cir. 1991)). In its analysis, the court must accept as true the factual allegations in the plaintiff's

complaint and should only consider the pleadings, disregarding affidavits or other materials.

*Scheuer v. Rhodes*, 416 U.S. 232 (1974). The motion should be granted only "if it appears beyond

doubt that the Plaintiff can prove no set of facts in support of his claim that would entitle him to

relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

**B.      Summary Judgment and Employment Discrimination Cases.**

A party is entitled to summary judgment if the evidence in the record "show[s] that there is

no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter

of law." Fed. R. Civ. P. 56(c). The Supreme Court has emphasized that the "summary judgment

procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part

of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive

determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Trial courts should enter summary judgment "against any party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Id.* at 322. Where the plaintiff fails to meet this burden,

"a defendant should not be required to undergo the considerable expense of preparing for and

participating in a trial." *Hayes v. Hambruch*, 841 F. Supp. 706, 708 (D. Md. 1994) (Harvey, J.),

*aff'd,* 64 F.3d 657 (4th Cir. 1995). The Fourth Circuit has emphasized that trial judges have an

"affirmative obligation. . .to prevent factually unsupported claims and defenses from proceeding to

trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). If the opponent of a

summary judgment does not have a reasonable prospect of prevailing the parties should not be

subjected to the time and expense of trial. *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572

(7th Cir. 1989).

The statutory purpose of summary judgment applies no less to discrimination cases than to commercial or other areas of litigation. *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). If the opponent of a summary judgment does not have a reasonable prospect of prevailing before a jury the parties should not be subjected to the time and expense of trial. *Palucki,* 879 F. 2d at 1572. A subjective, albeit genuine, belief of discrimination will not, in the employment discrimination context, shield a non-moving plaintiff from a grant of summary judgment. *Goldberg v. B. Green and Co., Inc.,* 836 F.2d 845, 848 (4th Cir. 1988); *see also Ennis v. National Association of Businesses and Educational Radio, Inc.,* 53 F.3d 55, 61 (4th Cir. 1995) (plaintiff may not impute discriminatory motive without factual support). Thus, while this Court is not bound by decisions of the agency or the EEOC in deciding a summary judgment motion, the previous record is certainly illustrative of what could be expected should the case proceed to trial. *See Simmons v. Marsh*, 690 F. Supp. 1489, 1490 n.12 (E.D. Va. 1988) (holding that the administrative record is pertinent to summary judgment), *aff'd*, 852 F.2d 556 (4th Cir. 1988); *Sperling v. United States*, 515 F.2d 465, 484 (3d Cir. 1975) (agency record can be reviewed on a motion for summary judgment); *Cordy v. Shephard*, 481 F. Supp. 67, 69 (E.D. Pa. 1979) (same); *Jones v. United States Postal Serv.*, 78 F.R.D. 196, 200 (E.D. Mich. 1978) (administrative record may be the basis for a grant of summary judgment).

## IV.  ARGUMENT

**A.  Plaintiff's claims of failure to provide reasonable accommodation and wrongful termination must be dismissed because Plaintiff failed to exhaust her administrative remedies.**

Federal sector employees are required to exhaust their administrative remedies prior to bringing a claim for discrimination in federal district court. *Long v. Ringling Bros.-Barnum & Bailey Combined Shows, Inc.*, 9 F.3d 340, 343 (4th Cir. 1993) (citing *Zografov v. V.A. Medical*

11

*Center*, 779 F.2d at 970).  This requirement is not a technicality; "[r]ather, it is part and parcel of the congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel primary responsibility for maintaining nondiscrimination in employment." *See Plowman v. Cheney*, 714 F. Supp. 196, 199 (E.D. Va. 1989) (citing *Kizas v. Webster*, 707 F.2d 524, 544 (D.C. Cir. 1983)).

Federal employees who prosecute claims under the Rehabilitation Act are bound by the same administrative requirements as those that claim other forms of discrimination and as such must exhaust their administrative remedies.

> [A] federal employee who alleges employment discrimination on the basis of a handicap must exhaust the administrative remedies available under Title VII.  Title VII provides the exclusive channel by which such allegations may be heard in federal court.

*Vinieratos v. U.S. Department of Air Force*, 939 F.2d 762, 773 (9th Cir. 1991); *see also McAlister v. Secretary of DHHS*, 900 F.2d 157, 158 (8th Cir. 1990).  In addition, exhaustion of remedies requires compliance with relevant EEOC regulations.

> It is firmly established that timely assertion of administrative remedies is a prerequisite to filing an employment discrimination suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16.  Federal employees must comply with the EEOC regulations before a suit may be filed. Untimely administrative complaints must be rejected....  Similarly, court actions based on untimely administrative complaints must also be dismissed.

*Saunders v Stone*, 758 F. Supp. 1143, 1145 (E.D. Va. 1991), *aff'd*, 948 F.2d 1282 (4th Cir. 1991).

Pursuant to EEOC regulations,

> [a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

29 C.F.R. § 1614.105(a)(1).

To exhaust her administrative remedies with respect to her failure to provide reasonable

12

accommodation and wrongful termination claims, Plaintiff was required to comply with the 45 day time limit set forth in 29 C.F.R. § 1614.105(a)(1). In this case, the USPS had not permitted Plaintiff to work more than 2 hours since early 1999. Plaintiff did not, however, raise the issue with an EEO Counselor until April 9, 1999. Accordingly, Plaintiff has failed to exhaust her administrative remedies for any alleged failure to accommodate at any time prior to February 23, 1999, which is 45 days prior to the initial EEO Counselor contact on April 9, 1999. As such, the portion of Plaintiff's claim that seeks relief prior to February 23, 1999 must be dismissed.

In addition, the allegation that the USPS forced Plaintiff to go on disability retirement and, in effect, wrongfully terminated her from USPS employment, was never brought to the attention of an EEO Counselor. *See* Ex. 3. In addition, Plaintiff did not include a claim for wrongful termination in her formal EEO Complaint, *see* Ex. 4, nor did the USPS or EEOC address the issue at the administrative levels. *See* Exs. 5,6 and 7. For these reasons, Plaintiff failed to exhaust her administrative remedies as to her claim for wrongful termination and, therefore, this claim must be dismissed.

**B.    Plaintiff has failed to set forth a *prima facie* case of discrimination.**

Assuming, for the sake of argument, that Plaintiff exhausted all of her administrative remedies, she has failed to set forth a *prima facie* case of discrimination for all of her claims.

A plaintiff can prove a case of discrimination with direct evidence; if the plaintiff has no direct evidence of discrimination, however, a court must apply the three-part proof scheme outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). As outlined in *McDonnell Douglas*, first, the plaintiff must demonstrate a *prima facie* case of discrimination. Second, if the *prima facie* case is established, an inference of discrimination arises that may be rebutted by an employer on a showing of legitimate, non-discriminatory reasons for the adverse employment actions. *McDonnell*,

411 U.S. at 802. Third, if the employer makes this showing, the plaintiff must prove by a preponderance of the evidence that the employer's proffered reasons for the adverse employment action are pretextual. *McDonnell*, 411 U.S. at 804; *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir. 1989).

Under some circumstances, a plaintiff's *prima facie* case, combined with sufficient evidence that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-148 (2000). Even if the plaintiff demonstrates a *prima facie* case and sufficient pretext, however, the defendant will still be entitled to judgment as a matter of law if there is evidence that precludes a finding of discrimination; that is if "no rational fact finder could conclude that the action was discriminatory." *Id.*; *Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir. 2000). If a plaintiff cannot state a *prima facie* case and cannot prove that the employer's proffered legitimate non-discriminatory reasons are pretextual, then she cannot prevail and summary judgment must be granted for the Defendant.

As set forth more fully below, Plaintiff cannot establish a *prima facie* case of discrimination under the Rehabilitation Act, for wrongful termination, or for failure to provide reasonable accommodation. Accordingly, Plaintiff's Complaint must be dismissed or, in the alternative, judgment entered in favor of Defendant.

### 1. Plaintiff cannot establish a *prima facie* case of discrimination under the Rehabilitation Act.

To prevail on a claim brought under the Rehabilitation Act, Plaintiff must show (1) that she has a disability, (2) that she is otherwise qualified for the position, and (3) that she has suffered an adverse employment action solely because of her disability. *Doe v. University of Md. Med. Sys.*

*Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995).[4]  For purposes of this Motion only, Defendant

concedes that Plaintiff has a disability - Multiple Sclerosis.  Plaintiff, however, cannot establish a

*prima facie* case, as she is unable to prove that she was qualified for her position.  In addition,

Plaintiff cannot prove that she suffered from an adverse employment action.

Plaintiff's position as a distribution clerk required her to lift and carry trays weighing

between 23-35 pounds; empty containers weighing between 209 and 1000 pounds; distribute mail

to carrier routes at a rate of 1150 flats or 2270 letters per hour; push containers loaded with mail;

lift trays from containers of parcels weighing up to 70 pounds and place them in 48 hampers; spread

trays of letters and flats; and push rolling equipment to transport mail.  Orsini Dec., ¶ 4 and Att. 5.

The position required mobility and the ability to move USPS equipment.  *Id.*

In August 1998, Dr. Kane found Plaintiff fit for light duty and sedentary work, but that she

could not operate machinery.  Orsini Dec., ¶ 5 and Att. 7.  As her disease progressed, Plaintiff was

unable to walk without assistance due to balance problems, nor was she able to carry, lift, push, or

pull.  Id., ¶ 10 and Att. 10.  Also, she was not able to perform fine manipulation and manual tasks

due to spasticity.  *Id.*  A neurological exam showed that she was "significantly compromised" in

terms of speed and dexterity in the right upper extremity which does not allow her to attain the goals

of 1150 flats or 2270 letters per hour in distributing mail to carrier routes.  *Id.*  As of June 16, 1999,

Dr. Kane found Plaintiff to be totally disabled and unfit for duty.  *Id.*, ¶ 11 and Att. 11.  Thus, as of

August 26, 1998, Plaintiff was unable to perform the essential functions of her position of record

with or without accommodation.  Accordingly, Plaintiff cannot establish a *prima facie* case of

---

[4]  Because Plaintiff is a federal employee, her disability discrimination claim is governed by the Rehabilitation Act.  Because the provisions of the Rehabilitation Act and the Americans with Disabilities Act are identical, the courts frequently look to case law interpreting the one act to construe the other act.  *McPherson v. Michigan High School Athletic Ass'n*, 119 F.3d 453 (6th Cir. 1997).

discrimination under the Rehabilitation Act, and her case must be dismissed.

Even if Plaintiff could establish a *prima facie* case under the Rehabilitation Act, her claim must fail because the USPS articulated legitimate, non-discriminatory reasons for reducing Plaintiff's hours. As of January 1999, Plaintiff was physically unable to assume the full duties of the distribution clerk position and she was on temporary light duty. Orsini Dec., ¶ 8. Her light duties were provided at management's discretion depending on the needs of the USPS and were not part of funded vacant position to which Plaintiff was permanently assigned. *Id*., ¶¶ 6-7. When the Lutherville/Timonium Post Office stopped mail processing, the work load at the Post Office dropped off considerably. *Id*., ¶ 7. As a result, the Postmaster decided to excess four employees, reduce light duty hours, and have the light duty work be absorbed by clerical employees with down time. *Id*. Accordingly, the USPS articulated legitimate business reasons for its decision to reduce Plaintiff's hours to two hours per day. Plaintiff does not and cannot present any evidence to show that the USPS's articulated reasons are pretextual.

Moreover, Plaintiff cannot show that she was subjected to an adverse employment action. Regarding Plaintiff's allegations that she was "threatened with arrest," such action does not constitute an adverse action. "An absolute precondition to [any discrimination] suit [is] that some adverse employment action [has] occurred." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985); *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999) (Title VII liability arises only from "tangible employment action."). An adverse employment action is "characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating ... [but not] ... interlocutory or mediate decisions having no immediate effect upon employment conditions." *Page v. Bolger*, 645 F.2d 227, 230-233 (4th Cir. 1981). "[W]ithout evidence that the terms, conditions, or benefits of [a plaintiff's] employment were adversely affected," there is no

16

adverse employment action. *Munday v. Waste Management of North America, Inc.*, 126 F.3d 239, 243 (4th Cir. 1997). *See also Von Gunten v. Maryland*, 243 F.3d 858, 863-866 (4th Cir. 2001); *Reinhold v. Commonwealth of Virginia*, 151 F.3d 172, 174-175 (4th Cir. 1998) (adverse action generally means "a significant change in employment status ... [which in most cases] involve[s] economic harm.").

Notably, Plaintiff challenges not *actual* arrest, but rather Supervisor Smith's statement that he would call the USPS police if Plaintiff did not leave the premises since she was not scheduled to work that day. However, Plaintiff left the premises on her own without incident.

In *Settle v. Baltimore County,* 34 F. Supp.2d 969, 992 (D. Md. 1999)(Davis, J.), *aff'd*, 203 F.3d 822 (4th Cir. 2000), this Court found that inconvenience and anxiety over an investigation which does not lead to discipline is not independently cognizable as adverse employment action under Title VII. By analogy, Defendant asserts that under the facts of this case, Supervisor Smith's statement to Plaintiff did not constitute a cognizable adverse employment action since the USPS police were never called, Plaintiff was never arrested, the "the terms, conditions, or benefits" of Plaintiff's employment were not impacted, *Munday*, 126 F.3d at 243, and Plaintiff was only the subject of an "interlocutory or mediate" action which does not rise to the level of cognizable adverse employment action. *Page*, 645 F.2d at 230, 233.

In addition, there was a legitimate business reason for Supervisor Smith's actions. On April 13, 1999, Supervisor Smith spoke with Plaintiff by phone and told her that he would not be able to provide her with any light duty work for Wednesday April 14, and that she was not to report to work. She reported to work in spite of Supervisor Smith's notice, thus ignoring the direct order of her supervisor. When Supervisor Smith approached her about why she was ignoring the notice, she did not provide an explanation. Therefore, he informed her that she was to leave and if she did not

17

he would have to call the USPS police and have her escorted off of USPS premises.

Moreover, Plaintiff's claim that she was, in effect, wrongfully terminated because she was "forced" to take disability retirement was not an adverse employment action. As discussed more fully below, Plaintiff voluntarily elected to take disability retirement based on her medical condition and inability to perform her job. Therefore, there was no adverse employment action relative to her disability retirement.

For all of the foregoing reasons, Plaintiff has failed to present a *prima facie* case of discrimination under the Rehabilitation Act and, therefore, her case must be dismissed or, in the alternative, judgment entered in favor of Defendant.

### 2.    Plaintiff cannot establish a *prima facie* case that she was wrongfully terminated.

Plaintiff is unable to make a *prima facie* showing that the USPS wrongfully terminated her when the USPS allegedly "forced her into disability retirement." *See* Complaint ¶ 4(B), (D). To prove wrongful termination based on her disability, Plaintiff must establish a *prima facie* by demonstrating that (1) she is disabled; (2) she was discharged; (3) at the time of her discharge, she was performing the job at a level that met his employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio*, 53 F.3d 55, 58 (4th Cir. 1995).

In this case, Plaintiff cannot establish a *prima facie* case of discrimination with respect to her disability retirement. For purposes of this Motion only, the USPS concedes that Plaintiff had a disability. The USPS, however, did not terminate Plaintiff's employment or force her into retirement. A review of her disability retirement application indicates that it was entirely voluntary and that she applied for disability retirement because she "became disabled" for her position on June 11, 1999. Although she now claims in her Complaint that "I did not deserve to have my hours

18

cut to zero and to be forced to retire as there was work for me, and I performed," Complaint, ¶ 6, this statement is not supported by the underlying record.

As of June 16, 1999, Dr. Kane stated that Plaintiff was totally disabled and unable to work. Orsini Dec., ¶ 11 and Att. 11. Plaintiff has proffered no evidence that she could perform any meaningful work for the USPS, let alone that she was "otherwise qualified" to perform essential job functions of her position of record in spite of her disability. *See Southeastern Community College v. Davis*, 442 U.S. 397 (1979). Even if Plaintiff were able to perform a set of sedentary duties returning undeliverable mail, such duties did not constitute a funded vacant position and they were unavailable as a result of the previously discussed work reduction in the Lutherville/Timonium Post Office. The USPS is not required to "make work" for disabled individuals or pay them to come to work and perform no meaningful work. *See Williams v. AVNET, Inc*., 910 F. Supp. 1124, 1136 (E.D.N.C. 1995), *aff'd*, 101 F.3d 346 (4th Cir. 1996). Therefore, Plaintiff cannot establish a *prima facie* case of wrongful termination and, therefore, her claim of wrongful termination must be dismissed or, in the alternative, judgment entered in favor of Defendant.

**3.    Plaintiff cannot meet her burden of establishing that the USPS failed to provide reasonable accommodation.**

Plaintiff has not met her burden of showing that Defendant failed to provide reasonable accommodation to allow her to perform her job. In the context of the Rehabilitation Act, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity . . ." 42 U.S.C. § 12112(b)(5).

If an accommodation to the individual's disability is required to enable an employee to

perform his or her essential job functions, the employee must provide evidence that a reasonable accommodation is possible.  29 C.F.R. § 1614.702(f)(2).  An employee must then show that the employer failed to make a needed reasonable accommodation.  *See Myers v. Hose*, 50 F.3d 278, 281 (4th Cir. 1995); *Bryant v. Better Business Bureau of Greater Maryland*, 923 F. Supp. 720, 733 (D. Md. 1996)(Davis, J.).  Once the employee makes this *prima facie* showing that a reasonable accommodation is possible, the employer bears the burden of demonstrating that it in fact made a reasonable accommodation or was unable to make a reasonable accommodation because it would have been an undue hardship on its program to do so.  *Barth v. Gelb*, 2 F.3d 1180, 1186-87 (D.C. Cir. 1993).  If an employer demonstrates an inability to accommodate, the employee has the burden to rebut the employer's evidence.  *Johnson v. Sullivan*, 764 F. Supp. 1053, 1065 (D. Md. 1991) (Murray, J.).

It appears from Plaintiff's Complaint that she is arguing that she can perform essential job functions of her position of record with accommodation.  In addition, she appears to argue that the USPS is obligated to accommodate her by assigning her to a permanent light duty position in which she would be able to process "nixie" mail for eight hours per day.  Either way, Plaintiff's claims of failure to provide reasonable accommodation lack merit and must be dismissed.

The record indicates that Plaintiff cannot perform essential job functions with or without accommodation.  As of August 26, 1998, Dr. Kane stated that Plaintiff could only do sedentary work and that she could not operate machinery.  Plaintiff suggested to the RAC that she could perform the duties of a distribution clerk by using a scooter to carry trays of mail and for general mobility, use USPS equipment for stability as pushing them to destination, push parcels on floor with her scooter, use co-worker assistance to get scooter in/out of car, and/or use co-worker assistance in lifting trays of mail.  Orsini Dec., ¶ 12 and Att. 5.  The USPS, through its RAC, determined that

20

these suggestions were unacceptable because the removal of mail from containers using USPS equipment for stability is a major safety issue; the weight is too much for her to control, visibility is reduced and should she lose control, it would cause her to fall and/or injury another employee, pushing parcels on floor is increasing the potential of damage of mail, and/or having a co-worker assist her with lifting is, in effect, having another employee do her job which is not required under the Rehabilitation Act. *Id*. The USPS also found that Plaintiff's debilitating conditions of instability of gait, moderate-to-severe spastic paraphrasis and opthalmoplegia are debilitating conditions which do not allow her to push equipment, breakdown or lift trays of mail and place in another area or stand/move around boxes. *Id*. In addition, the RAC found that Plaintiff has an eye condition that makes it difficult to read, write and sort mail. *Id*.

Case law in the Fourth Circuit states that an accommodation is considered unreasonable if it requires creation of a job or elimination of an "essential function." *Lamb v. Qualex, Inc*., 28 F.2d 374, 378 (E.D. Va. 1998); *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 699-700 (4th Cir. 1998). Because the RAC concluded that Plaintiff was unable to perform any essential job functions and that there were no reasonable accommodations which would permit her to perform the essential functions of her distribution clerk position, the USPS acted appropriately in determining that it could not accommodate her.

Plaintiff also appears to ask the USPS to accommodate her by permanently assigning her to light duty position for eight hours per day as a "nixie" clerk. Plaintiff was not qualified for such a position because, due to her failing eyesight and her difficulty in performing manual activities, she was unable to perform the duties of a nixie clerk. Assuming, for the sake of argument, that she could perform the duties as a nixie clerk, this is not a reasonable accommodation because it would eliminate almost all functions of her position of record as a distribution clerk. Moreover, Postmaster

Orsini has testified that due to work load reductions, he had no more than two hours of work to give her as a nixie clerk. Orsini Dec., ¶ 6-7. Reasonable accommodation does not require the employer to reassign an employee, (unless the reassignment is to a funded vacant position and employee can perform essential job functions of such position), *see Carty v. Carlin*, 623 F. Supp. 1181, 1188 (D. Md. 1985)(Northrop, J.), to create a new position for the employee, *see Rhone v. United States Department of the Army*, 665 F. Supp. 734, 746-47 (E.D. Mo. 1987), or to restructure a job in a way that would usurp the legitimate rights of other employees. *See Daubert v. United States Postal Service*, 733 F.2d 1367 (10th Cir. 1984). Furthermore, it is never reasonable to expect an employer to create a "make-work" position, in order to accommodate a disabled employee. *See Williams v. AVNET, Inc.*, 910 F. Supp. 1124, 1136 (E.D.N.C. 1995), *aff'd*, 101 F.3d 346 (4th Cir. 1996).

The instant case is very similar to the case of *Hill v. Harper*, 6 F. Supp. 2d 540 (E.D. Va. 1989). In *Hill*, the plaintiff, a disabled Deputy Sheriff, wanted to be permanently assigned to "control room" duties. The plaintiff also requested as an accommodation the elimination of other essential functions of the deputy sheriff position that were more physically demanding. The court, holding that the defendant had no duty to accommodate the request, stated that

> ...because this accommodation effectively eliminated the "essential function" of being able to rotate through the various duty posts, the Court finds that it does not constitute a "reasonable accommodation." Thus, irrespective of the length of time Hill previously worked in the control room, Sheriff Harper was not required to continue this accommodation. Having failed to identify any other possible "reasonable accommodations," the Court finds that Hill has not successfully stated a prima facie case of employment discrimination under the ADA.

6 F. Supp. 2d at 544. Similarly, Plaintiff's claim of failure to provide reasonable accommodation fails, as Plaintiff has failed to identify any possible reasonable accommodation. Moreover, the USPS is not required to reassign Plaintiff to another job, nor is the USPS required to make work or create a new position for Plaintiff. Accordingly, Plaintiff's assertion that the USPS failed to provide

22

her with a reasonable accommodation must be dismissed or, in the alternative, judgment entered in favor of Defendant.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff failed to exhaust the administrative remedies available for portions of her failure to provide reasonable accommodation and her wrongful termination claims.  Even if the Court accepts Plaintiff's claims, Plaintiff has failed to establish a *prima facie* case of discrimination under the Rehabilitation Act, failed to establish that she was wrongfully terminated, and failed to establish that the United States Postal Service failed to provide her with reasonable accommodation.  Accordingly, this Court should dismissal Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, enter judgment in favor of Defendant pursuant to Fed. R. Civ. P. 56.

Respectfully submitted,

Thomas M. DiBiagio
United States Attorney


By:_____/s/_____
John W. Sippel, Jr.
Assistant United States Attorney
Federal Bar No. 25484
6625 United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201
(410) 209-4807
(410) 962-2310 facsimile

Attorneys for Defendant, John E. Potter,
Postmaster General of the United States
Postal Service

23

<u>OF COUNSEL</u>:
Kathryn A. Good
Attorney
United States Postal Service
Capital Metro Law Department
400 Virginia Avenue, S.W., # 650
Washington, D.C.  20024-2730