### UNITED STATES POSTAL SERVICE
### EQUAL EMPLOYMENT OPPORTUNITY CASE
### IN THE MATTER OF

RECEIVED

JAN 2 3 2001

|  |  |
|---|---|
| Beverly L. Wright,<br>    Complainant, | ) <br> ) <br> ) <br> ) |
| v. | ) <br> ) |
| William J. Henderson,<br>Postmaster General,<br>U. S. Postal Service,<br>(Capital Metro Operations),<br>    Agency. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Date: January 19, 2001

Agency Case No. 4K-210-0133-99

## FINAL AGENCY DECISION

This is the Postal Service's **final decision** on the above-cited discrimination complaint. Beverly Wright (Complainant) alleges discrimination on the bases of race (African American), sex (female) and physical disability (Multiple Sclerosis) when: **(2)** on February 23, 1999 to July 1999, you were only allowed to work 2 hours per night and forced to use leave to cover the remainder of the tour; **(3)** on unspecified dates, Supervisor Smith stayed at your work station and counted every piece of mail processed by you; **(4)** on April 14, 1999, you were threatened with arrest by Supervisor Smith in the presence of another employee and told not to come to work until this matter was resolved; **(5)** during March 1999 and July 1999, you were forced to submit to fitness for duty examinations; **(6)** on May 12, 1999 and May 24, 1999, you were forced to go home by Supervisor Laurie Schultz; and, **(7)** on June 11, 1999, you presented documents to the supervisor for the approval of Family Medical Leave and on June 16, 1999, you received a phone call from Postmaster Mike Orsini ordering you to submit to a fitness for duty examination.[1]

## CASE CHRONOLOGY

Beverly Wright requested counseling on April 9, 1999. After a final interview with an EEO Counselor on June 18, 1999, Ms. Wright filed a formal complaint on June 29, 1999. The complaint was accepted for investigation on October 28, 1999, and the investigation was completed on March 23, 2000. By certified mail dated April 5, 2000, Ms. Wright was sent

---

[1] By partial acceptance/partial dismissal dated October 28, 1999, the agency dismissed issue #1 in accordance with 29 C.F.R. 1614.107(b). As this appeal was processed prior to November 1999, Ms. Wright was provided appropriate appeal rights to challenge the dismissal of issue #1. Ms. Wright did not appeal the dismissal. Accordingly, this decision will only address the accepted issues.

Exhibit 6

a copy of the investigative file and notified of the opportunity to request either a hearing before an EEOC Administrative Judge or a final agency decision without a hearing.

As evidenced by the return receipt, Ms. Wright received the file and hearing rights on or about April 8, 2000, but did not request a hearing before the EEOC or a final agency decision without a hearing. On August 9, 2000, Ms. Wright was notified that a supplemental investigation was conducted. The supplemental investigation was completed on October 13, 2000. Following completion of the supplemental investigation the agency has not received any response from Ms. Wright regarding rights to either a hearing or a final agency decision. Therefore, in accordance with 29 C.F.R. 1614.110, the agency is now issuing its final decision in this matter.

### ANALYSIS

In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court set forth the basic allocation of the burden and order of proof in a Title VII case. See also, Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). The complainant must first establish a prima facie case of discrimination, i.e., facts which, if unexplained, reasonably give rise to an inference of discrimination. McDonnell Douglas at 802; Burdine at 253. If the complainant has been successful in establishing a prima facie case, the employer must then ". . . articulate a legitimate, nondiscriminatory reason . . ." for the employment decision. The employer need demonstrate only that a genuine issue of fact is raised by the evidence as to its action in order to meet its burden of going forward with the evidence. See, Furnco Constr. Corp. v. Waters, 438 U.S. 567 (1978); Board of Trustees v. Sweeney, 439 U.S. 24 (1978).

Once the employer articulates a legitimate, nondiscriminatory reason, the burden shifts back to the complainant to prove by a preponderance of evidence that the employer's stated reason was a pretext for intentional discrimination. McDonnell Douglas at 802-804; Burdine at 252-253; United States Postal Service Board of Governors v. Aikens, 460 U.S. 711 (1983). To meet this burden a complainant must show that the employer did not rely on its proffered reason or that the proffered reason is not worthy of belief. However, proof of discriminatory motive is critical in a disparate treatment case, International Brotherhood of Teamsters v. United States, 431 U.S. 324, 325 (1977), and the burden of proof remains at all times with the complainant. Aikens at 716. Thus, it is not sufficient merely to prove that the defendant did not rely on his proffered reason. There must be a further finding that the defendant relied on a discriminatory motive to establish Title VII liability. Clark v. Huntsville City Board of Education, 717 F.2d 525, 529 (11th Cir. 1983); accord, Benzies v. Illinois Dept. of Mental Health & Developmental Disabilities, 810 F.2d 146, 148 (7th Cir. 1987), cert. denied, 483 S. Ct. 1006 (1987); Davis v. State University of New York, 802 F. 2d 638, 642 (2d Cir. 1986); Connor v. Ft. Gordon Bus Co., 761 F. 2d 1495, 1500-01 (11th Cir. 1985); Slade v. Billington, 46 Fair Empl. Prac. Cas. (BNA) 1810, 1821 (D.D.C. 1988); Edwards v. Marsh, 644 F. Supp. 1564, 1568, 1570 (E.D. Mich. 1986); see also, Dea v. Look, 810 F.2d 12, 15 (1st Cir. 1987). As instructed by the United States Supreme Court in the case of St. Mary's Honor Center v. Hicks, 113 S. Ct. 2752, 2756 (1993):

[A] reason cannot be proved to be "a pretext for *discrimination*" unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.

. . . . .

Title VII does not award damages against employers who cannot prove a nondiscriminatory reason for adverse employment action, but only against employers who are proven to have taken adverse employment action by reason of (in context of the present case) race. That the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is correct.

(Emphasis in original).

The principles articulated in McDonnell Douglas and Burdine are applicable to disability complaints brought under the Rehabilitation Act of 1973. Prewitt v. U.S. Postal Service, 662 F.2d 292 (5th Cir. 1981). In order to prevail on an allegation of disability discrimination based on disparate treatment, a complainant must establish that: (1) they are a disabled person as defined in EEOC Regulation 29 C.F.R. 1614.203(a)(1); (2) they are a qualified disabled person as discussed in 29 C.F.R. 1614.203(a) (6); (3) they were subjected to an adverse action under circumstances giving rise to an inference of discrimination; and (4) the agency's reasons were merely a pretext for discrimination. If the issue of reasonable accommodation is raised, the agency must demonstrate that the accommodation would impose an undue hardship on the operation of its program.

### AGENCY'S FINDINGS

To assert a claim of disability discrimination under the Rehabilitation Act, Ms. Wright must satisfy the threshold requirement of being a disabled person, as defined by the statute. Jasany v. United States Postal Service, 755 F.2d 1244, 1248 (6th Cir. 1985) ("Jasany"). A disabled person is defined as one who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. Section 706(7)(B).

Regulations adopted by the Equal Employment Opportunity Commission explain further the major components of the statute's definition of "disabled person." These regulations define those components as follows:

(2)    *Physical or mental impairment* means:

(i) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: Neurological, musculoskeletal, special sense organs, cardiovascular,

- 4 -

reproductive, digestive, respiratory, genitourinary, hemic and lymphatic, skin, and endocrine; or

ii) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

(3)   *Major life activities* means functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

(4)   *Has a record of such an impairment* means has a history of, or has been classified (or misclassified) as having, a mental or physical impairment that substantially limits one or more major life activities.

(5)   *Is regarded as having such an impairment* means has a physical or mental impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of an employer toward such impairment; or has none of the impairments defined in (a)(2) of this section but is treated by an employer as having such an impairment.

29 C.F.R. Section 1614.203(a)(2)-(5).

According to the McDonnell Douglas paradigm mentioned above, to establish a *prima facie* case of disability discrimination based on disparate treatment, Ms. Wright must first: (1) meet the statutory definition of a disabled person; (2) meet the statutory definition of a qualified disabled person; (3) show the agency was aware of complainant's disability; (4) show subjection to an adverse employment action; and (5) show less favorable treatment as compared to similarly situated employees who are not members of the claimed protected group. *See*, McDonnell Douglas, supra. at 802-04. A review of the record evidence indicates that Ms. Wright has not established a *prima facie* case of physical disability discrimination.

The record establishes that Ms. Wright was not hired with any disability (Investigative File, p. 58). However, review of the investigative file discloses that Ms. Wright identified her physical disability as Multiple Sclerosis. (Investigative File, p. 7). Medical documents contained within the investigative file from June 1996 until June 1999, establishes that for a number of years, the Agency has been aware of Ms. Wright's medical condition. Additionally, the evidence of record establishes that as early as August 1998 Ms. Wright was restricted to "sedentary work, no use of machinery" and that she needed a "chair with back support." (Investigative File, p. 53). These restrictions/limitations were honored by the Agency and have remained in force. As evidence of further accommodation the Postal Medical Officer advised local managers that Ms. Wright "may use an electric scooter for ambulation in the building while working." (Investigative File, p. 52). Further, the record evidence establishes that Ms. Wright was granted light duty work.

(Investigative File, Affidavits B-1 &2 & D-1). The light duty work assigned to Ms. Wright was to return undeliverable (nixie) mail. (Id.).

The Agency stipulates that Ms. Wright is a disabled person as defined in EEOC Regulation 29 C.F.R. 1614.702 with a physical impairment that substantially limits her mobility. Having established that Ms. Wright meets the threshold requirement that would entitle her to the protection of the Rehabilitation Act, the second inquiry is whether Ms. Wright is a qualified individual with a disability pursuant to EEOC Regulation 29 C.F.R. 1614.702(f). In order to qualify for protection under the Rehabilitation Act, Ms. Wright must also show that she is a "qualified disabled person." A qualified disabled person is defined as one who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of herself or others. 29 C.F.R. 1614.702(f). Ms. Wright is not a qualified disabled person as she is unable to perform the essential functions of her Distribution Clerk position with or without accommodation. (Investigative File, pp. 24-31).

Regarding the time period of this appeal pertaining to Ms. Wright's light duty assignment, she was capable of performing the essential functions within that assignment until June 16, 1999. (Investigative File, Exhibit S-3, p. 14 of 14). Postmaster Orsini testified that Ms. Wright was found not fit for duty on June 16, 1999 and has been out on sick leave pending review by the District Reasonable Accommodation Committee. (Investigative File, p. 59b). The Reasonable Accommodation Committee evaluation reflected the following:

> (1)    Complainant has an established medical condition, current medical restrictions which are permanent in nature. She also has an impairment which significantly limits a major life function/activity: Walking — has documented evidence of balance problems that requires assistance in mobility and Working —unable to carry, lift, push, pull, walk without assistance, and perform fine manipulation; performing manual tasks — spasticity causes reduction of fine manipulation, balance problems prevent carrying, lifting. She cannot be accommodated by eliminating non-essential functions of the position (current or potential new position).

> (2)    Ms. Wright (Complainant) has suggested the following as means of accommodation for her to perform the duties of the distribution clerk: Use scooter to carry trays of mail and for general mobility, use postal equipment (APC) for stability as pushing them to destination, push parcels on floor with her scooter, use co-worker assistance to get scooter in/out of car, use co-worker assistance in lifting trays of mail

> (3)    There are no accommodations available to enable Ms. Wright (Complainant) to perform the essential functions of the distribution clerk. She has made suggestions; however, they are not acceptable as noted below:

- 6 -

Using scooter to carry trays of mail and for general mobility (if adaptable to carrying trays) could be used to transport mail from area to another, but Ms Wright (Complainant) cannot remove the mail from APC or BMC, using postal equipment for stability is a major safety issue; the weight is too much for her to control, visibility is reduced and should she lose control, it would cause her to fall and/or injury another employee, pushing parcels on floor is increasing the potential of damage of our customers' mail, co-worker can assist her with her scooter, having co-worker to assist with lifting is having another employee do her job.

Ms. Wright's physician has stated that "when seated she is capable of performing manual activities such as letter sorting relatively well". Independent neurology exam showed "significantly compromised" speed and dexterity in the right upper extremity which does not allow her to "even come close to the goals of 1150 flats or 2270 letters per hour" in distributing mail to carrier routes. Ms. Wright is observed to have instability to gait, moderate-to-severe apastic paraparesis and opthalmoplegia. These debilitating condition doe not allow her to push the APC or BMC equipment, breakdown or lift trays of mail and place in another area, or stand/more around boxes. She has been observed to fall; she walks with assistance of cane or pushing a cart and at the same time uses the wall as a guide for mobility.

Ms. Wright also has an eye condition that makes it difficult to read and to write, this condition enhances her difficulty in sorting mail

The essential functions of her position requires mobility and ability to move equipment. Her compromised balance and motor dexterity do not allow her to safely push rolling equipment or perform any of the essential functions of the distribution clerk position.

Any accommodation by co-workers assisting her would entail that co-worker perform the essential functions of the position

(Investigative File, p. 80).

Accordingly, based upon the circumstances of these claims, Ms. Wright is not a qualified disabled person. In this appeal Ms. Wright alleges discrimination on the basis of physical disability as follows:

**Issue #2:** On February 23, 1999 to July 1999, she was only allowed to work 2 hours per night and forced to use leave to cover the remainder of the tour. The record evidence establishes that Ms. Wright was accommodated with light duty work starting in August 1998 with no reduction of her work hours. Further, the record evidence establishes that during January 1999, Ms. Wright's work hours were reduced to 2 hours per day. Michael Orsini, Postmaster Lutherville/Timoniun provided testified as follows:

- 7 -

> I was assigned as OIC of Lutherville/Timonium in January 1999. At that
> time there was a change in mail processing with the removal of automated
> equipment from Lutherville. I was required to reduce the workforce to
> meet the new reduced workload. I cut back the light duty hours and
> excessed four regular clerks from this office to meet this objective.

(Investigative File, p. 59).

Thus, the evidence of record establishes that Ms. Wright's work hours were reduced to
two hours per night as a result of workforce/workload reductions at the post office she
was assigned. Additionally, record evidence establishes that between February and
April 1999, four non-disabled employees were excessed (reassigned) to other facilities
as a part of workload reduction efforts. (Investigative File, Affidavits B-1 & 2 & D-1).
Accordingly, Ms. Wright's work hours were reduced based upon legitimate business
reasons and not on the basis of her claim of disability discrimination. Notwithstanding,
the above, Ms. Wright failed to cite any comparative employees outside of her protected
group who were not physically disabled and/or treated more favorably. Accordingly, Ms.
Wright has not met the initial burden of establishing a *prima facie* case of discrimination
based on her claim of being physically disabled.

**Issue #3:** On unspecified dates Supervisor Smith stayed at her workstation and
counted every piece of mail by her. The evidence of record establishes that Ms. Wright
failed to establish a causal nexus between her disability and this claim. Additionally, Ms.
Wright failed to cite any comparative employees outside of her protected group who were
not physically disabled and/or treated more favorably. Supervisor Ray Smith testified as
follows:

> I am the regular supervisor in charge of mail processing at our office. I am
> directly responsible for our budget and all clerk's productivity related to
> letter, flats, parcels. I did not stay in Beverly Wright's work area any longer
> or shorter than I do with any other employee's work area when I am
> observing their work habits and productivity. I have too many other
> responsibilities and make periodic[al] visits to all our work areas. In other
> areas, productivity would be measured by footage or containers of parcels
> processed. At the nixie table I may have counted the pieces but do not
> recall that. Further, if I had, no discipline or criticism resulted as I recall.

(Investigative File, p. 62).

Thus, Ms. Wright has failed to establish that Supervisor Smith's responsibility to monitor
all work produced by subordinate employees in this instance was done solely due to her
impairment. Notwithstanding, EEOC Regulation 29 C.F.R. 1614.107(a) provides that an
agency shall dismiss a complaint which fails to state a claim pursuant 29 1614.103. In
addition, the U.S. Supreme Court has stated that an employee is aggrieved when some
personal loss or harm has been suffered with respect to a term, condition, or privilege
of employment. Trafficante v. Metropolitan Life Insurance Co., 409 U.S. 205 (1972).

- 8 -

Based upon a through review of the investigative file, the Agency finds that this allegation must be dismissed on the grounds of failure to state a claim.

**Issue #4:** On April 14, 1999, she was threatened with arrest by Supervisor Smith in the presence of another employee and told not come to work until this matter was resolved. The evidence of record establishes that Ms. Wright failed to establish a causal nexus between her disability and this claim. Additionally, Ms. Wright failed to cite any comparative employees outside of her protected group who were not physically disabled and/or treated more favorably. Supervisor Ray Smith testified that on Wednesday, April 13, 1999, via telephone he told Ms. Smith that management would not be able to provide her with any light duty work and that she was not to report for work on April 14. (Investigative File, p. 62).  Supervisor Smith testified that contrary to his instructions, Ms. Wright reported to work and did not provide an explanation when he inquired about why she was ignoring his prior instruction. (Id). Supervisor Smith testified that he notified Ms. Wright that she was to leave the building and if she did not he would call Postal Police and have her escorted off Postal premises. (Id.). Supervisor Smith testified that he did not threaten Ms. Wright with an arrest. (Id). Supervisor Smith added that Ms. Wright was scheduled for work the following night. (Id.). Ms. Wright has failed to establish that Supervisor Smith's actions were based solely on her impairment or that his articulation is pretextual.

Notwithstanding, EEOC Regulation 29 C.F.R. 1614.107(a) provides that an agency shall dismiss a complaint which fails to state a claim pursuant 29 1614.103. In Addition, the U.S. Supreme Court has stated that an employee is aggrieved when some personal loss or harm has been suffered with respect to a term, condition, or privilege of employment. Trafficante v. Metropolitan Life Insurance Co., 409 U.S. 205 (1972). Based upon a through review of the investigative file, the Agency finds that this allegation must be dismissed on the grounds of failure to state a claim.

**Issue #5:** During March 1999 and July 1999, she was forced to submit to fitness for duty examinations.   Ms. Wright was not forced to submit to fitness for duty examinations.  The record evidence establishes that the Agency only performed one (1) fitness for duty examination which occurred August 1998. (Investigative File, Exhibit S-3, p. 10 of 14). Ms. Wright subsequently was offered light duty work. The absence analysis establishes that Ms. Wright was absent from approximately February 15 until March 10, 1999 or about 23 days. (Investigative File, p. 57). Typically, absences of this duration must be cleared via a medical statement. Complainant presented a medical statement from her physician clearing her for duty.(Investigative File, Exhibit S-3, p. 8 of 14). Additionally, Ms. Wright failed to cite any comparative employees outside of her protected group who were not physically disabled and/or treated more favorably. Based upon the lack of evidence to substantiate this claim, Ms. Wright is not aggrieved. Notwithstanding, EEOC Regulation 29 C.F.R. 1614.107(a) provides that an agency shall dismiss a complaint which fails to state a claim pursuant 29 1614.103. In Addition, the U.S. Supreme Court has stated that an employee is aggrieved when some personal loss or harm has been suffered with respect to a term, condition, or privilege of employment. Trafficante v. Metropolitan Life Insurance Co., 409 U.S. 205 (1972).

- 9 -

Based upon a through review of the investigative file, the Agency finds that this allegation must be dismissed on the grounds of failure to state a claim.

**Issue #6:** On May 12, 1999 and May 24, 1999, she was forced to go home by supervisor Laurie Schultz. As stated under issue #2, the evidence of record establishes that Ms. Wright's work hours were reduced to two hours per night as a result of workforce/workload reductions at the post office where she was assigned. Additionally, record evidence establishes that between February and April 1999, four non-disabled employees were excessed (reassigned) to other facilities as a part of workload reduction efforts. (Investigative File, Affidavits B-1 & 2 & D-1). Lori Schulz, Acting Supervisor testified as follows:

> I am a (204-B) acting supervisor for my regular supervisor Ray Smith when he takes off. I was directed by my regular supervisor to give Ms Wright 2 hours light duty at the nixie table and to let her go. I followed that direction.

(Investigative File, p. 60).

Accordingly, Ms. Wright's work hours were reduced based upon legitimate business reasons and not on the basis of her claim of disability discrimination. Notwithstanding, the above, Ms. Wright failed to cite any comparative employees outside of her protected group who were not physically disabled and/or treated more favorably. Accordingly, Ms. Wright has not met the initial burden of establishing a *prima facie* case of discrimination based on her claim of being physically disabled.

**Issue #7:** On June 11, 1999 she presented documents to the supervisor for the approval of Family Medical Leave and on June 16, 1999 she received a phone call from Postmaster Mike Orsini ordering her to submit to a fitness for duty examination. Official records reveal that Ms. Wright requested FMLA on June 11, 1999 for the period of June 11, 1999 through January 6, 2000. Supervisor Ray Smith approved the request. (Investigative File, pp. 54-57). Accordingly, for the FMLA component, Ms. Wright is not aggrieved.

Regarding the fitness for duty component, Supervisor Smith testified that on June 16, 1999, Ms. Wright submitted a request for permanent light duty to the medical unit in Baltimore and that Dr. Kane found Ms. Wright to be totally disabled on that day. (Investigative File, Affidavit B-2, p. 2 of 2). Postmaster Orsini testified as follows:

> Ms. Beverly Wright has been unfortunately stricken with the terrible disease of multiple sclerosis. My observations of seeing her trying to maneuver around the Post Office, holding on to anything available to keep from falling, prompted me to get a medical evaluation

(Investigative File, Affidavit D-1, page 1 of 2).

- 10 -

The evidence of record establishes that a duty status report was generated and dated June 16, 1999. (Investigative File, Exhibit S-3, p. 14 of 14). The "duty status report" is distinguished from the report of a "fitness for duty exam." (Investigative File, Exhibit S-3, p 10 of 14). Dr. Marcia Kane, stated Ms. Wright was totally disabled from June 16, 1999, and must clear through the medical unit to return to work. (Id). The duty status report advises that Ms. Wright must "have her physician, treating physician, Dr. Thomas Furlow, MD complete forms and return (by fax with hard copy to follow) as soon as possible. (Id.). Not fit for duty at this time." (Id.). Ms. Wright did not challenge Dr. Kane's duty status determination. Assuming arguendo, that Ms. Wright was ordered for a fitness for duty examination, she has not shown that she suffered some personal loss or harm with respect to a term, condition, or privilege of employment. Trafficante v. Metropolitan Life Insurance Co., 409 U.S. 205 (1972). Further, the record evidence discloses that Ms. Wright completed an application for disability retirement dated July 7, 2000, admitting that she "became disabled" for her position on June 11, 1999. (Investigative File, Exhibit S-1, p. 3 of 4). Notwithstanding the above, Additionally, Ms. Wright failed to cite any comparative employees outside of her protected group who were not physically disabled and/or treated more favorably. Based upon the lack of evidence to substantiate this claim, Ms. Wright is not aggrieved. Notwithstanding, EEOC Regulation 29 C.F.R. 1614.107(a) provides that an agency shall dismiss a complaint which fails to state a claim pursuant 29 1614.103. Based upon a through review of the investigative file, the Agency finds that this allegation must be dismissed on the grounds of failure to state a claim.

According to the McDonnell Douglas paradigm mentioned above, to establish a prima facie case of race and/or sex discrimination, complainant must first show: (1) membership in the claimed protected groups; (2) was subjected to an adverse employment action; and (3) was treated less favorably than similarly situated employees who are not members of claimed protected groups. See, McDonnell Douglas, supra. at 802-04. As explained below, Ms. Wright in the present case has not established a prima facie case of race and/or discrimination.

In order to meet the burden of establishing less favorable treatment as compared to other employees outside the claimed protected groups, complainant must show that the cited comparison employee(s) were similarly situated. According to well-established legal precedent, all relevant aspects of a complainant's employment situation must be nearly identical to those of the comparative employees. See, e.g., Payne v. Illinois Central R.R., 665 F. Supp. 1038, 1043, (W.D.Tenn. 1987). In order to be similarly situated, other comparative employees must have reported to the same supervisor; must have been subject to the same standards governing discipline; and must have engaged in conduct similar to the complainant's without differentiating or mitigating circumstances that would distinguish their misconduct or the appropriate discipline for it. Mazzella v. RCA Global Communications, Inc., 642 F. Supp. 1531, 1547 (S.D.N.Y. 1986), aff'd, 814 F. 2d 653 (2d Cir. 1987). Accord Woods v. Milner, 760 F. Supp. 623, 645 (E.D. Mich. 1991) (comparative employees "must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct"); Cox v. Electronic Data Systems, 751 F. Supp. 680 (E.D.Mich. 1990).

- 11 -

In addition, EEO Commission decisions have also instructed that in order to be considered similarly situated, comparative employees must: 1) have come under the same manager's supervision; 2) have performed the same job function; 3) have been on the same tour; and 4) have been disciplined during roughly the same time period. Allen v. Department of the Navy, EEOC Request No. 05900539 (June 14, 1990); Kalivretenos v. United States Postal Service, EEOC Request No. 05890884 (October 13, 1989); Prichard v. United States Postal Service, EEOC Request No. 05880261 (July 19, 1988); Jackson v. Department of the Navy, EEOC Request No. 05880091 (June 22, 1988); Wright v. United States Postal Service, EEOC Request No. 05870622 (May 6, 1988).

A review of the record evidence establishes that Ms. Wright (African-American/female) failed to cite any similarly situated comparison employees outside of her protected groups who were treated more favorably. Accordingly, Ms. Wright has not met the burden of establishing a *prima facie* case of race and/or sex discrimination based on disparate treatment.

The record evidence establishes that the Agency articulated a legitimate, nondiscriminatory reason for its action. Ms. Wright, a Distribution Clerk assigned to the Lutherville Timonium Post Office, Lutherville Timonium, Maryland, was not discriminated against based upon the cited claims. Ms. Wright has an established medical condition, Multiple Sclerosis. Ms. Wright's regular duties as a distribution clerk involved scheme distribution, unloading trays and tubs of mail from large containers and carrying them to the appropriate carrier case (there are 48 cases), and unloading parcels from large containers and placing them in the appropriate carriers' hamper. The essential functions of Ms. Wright's Distribution Clerk assignment required mobility and the ability to move postal equipment. Ms. Wright's compromised balance and motor dexterity did not allow her to safely push rolling equipment or perform any of the essential functions of her normal distribution position. Therefore, during August 1998, agency officials provided Ms. Wright with a sedentary duty assignment that included the handling of nixie mail, which involves hand stamping mail with appropriate return to sender stamps, perhaps repairing torn mail, and other corollary functions. Subsequently, Ms. Wright's condition appeared to worsen in early 1999, as established by medical documents from Thomas W. Furlow, Jr. MD and Dr. Dino Patel. (Investigative File, S-3, pp. 11-12).

Michael Orsini, (Caucasian male/unknown disability), Postmaster Lutherville Timonium, testified as follows:

> I was assigned as OIC of Lutherville/Timonium in January 1999. At that time there was a change in mail processing with the removal of automated equipment from Lutherville. I was required to reduce the workforce to meet the new reduced workload. I cut back the light duty hours and excessed four regular clerks from this office to meet this objective. I noticed that Beverly Wright, who was on light duty for multiple sclerosis, had trouble maneuvering around the Post Office Building and had to hold on to things to get around. I asked the medical unit to determine if it was safe for her to work with her condition. They gave me appointments for her and she was found not fit for duty on June 16, 1999. She has been

- 12 -

out on sick leave pending reviews by the District reasonable accommodation committee, I have no light duty available at this time.

(Investigative File, p. 59).

Supervisor Smith testified that he has observed Ms. Wright's work performance no more of less that he has observed others. Supervisor Smith testified that he has not criticized Ms. Wright and/or issued disciplinary actions. Additionally, Supervisor Smith denied that he has threatened Ms. Wright. Accordingly, there was absolutely no evidence, presented by Ms. Wright that would establish that she was discriminated against on the bases of race, sex and/or physical disability under the circumstances that she alleges are associated with this matter.

The preponderance of evidence clearly supports a conclusion that the reasons articulated by the agency are the true reasons for the action taken. In sum, complainant has simply not met the burden of establishing that the agency's articulated reasons were not credible or were a pretext to mask prohibited discrimination. Furthermore, complainant has not presented any evidence to indicate that any agency official harbored a discriminatory animus towards members of complainant's protected groups.

## CONCLUSION

After a review of the entire record, the Postal Service is closing this case with a finding of **no discrimination** based on race, sex and/or physical disability.

## COMPLAINANT'S APPEAL RIGHTS

### Right to file a civil action

If you are dissatisfied with this final agency decision, you may file a civil action in an appropriate U.S. District Court **within 90 calendar days** of your receipt of this decision. If you choose to file a civil action, that action should be captioned <u>Beverely L. Wright vs. William J. Henderson, Postmaster General, U.S. Postal Service</u>. You may also request the court to appoint an attorney for you and to authorize the commencement of that action without the payment of fees, costs, or security in such circumstances as the court deems just. Your application must be filed within the same 90-day time period for filing the civil action.

### Appeal to the Equal Employment Opportunity Commission

In lieu of filing a civil action, you may appeal to the Equal Employment Opportunity Commission **within 30 calendar days** of the date of your receipt of this decision, or, if you are represented by an attorney, **within 30 calendar days** of your attorney's receipt of the decision. The appeal must be in writing and filed with the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, DC 20036-0848, or by personal delivery or facsimile.

- 13 -

The complainant should use EEOC Form 573, Notice of Appeal/Petition, (attached to the agency's decision) and should indicate what he or she is appealing.  Any supporting statement or brief must be submitted to the EEOC within 30 calendar days of filing the appeal. A copy of the appeal and any supporting documentation must also be submitted to the agency's designated office at: Office of EEO Compliance and Appeals, United States Postal Service, Capital Metro Operations, P O Box 1730, Ashburn, VA 20146-1730.  In or attached to the appeal to the EEOC, you must certify the date and method by which service of the appeal was made on the agency's office.

Failure to file within the 30-day period could result in the EEOC's dismissal of the appeal unless you explain, in writing, extenuating circumstances which prevented filing within the prescribed time limit. In this event, extending the time limit and accepting the appeal will be discretionary with the EEOC.

If you file an appeal with the EEOC's Office of Federal Operations, you may thereafter file a civil action in an appropriate U.S. District Court **within 90 calendar days** of your receipt of the Office of Federal Operations' decision. A civil action may also be filed after 180 calendar days of your appeal to the EEOC, if you have not received a final decision on your appeal.

Naomia A. Bourdon
Manager, Human Resources
Capital Metro Operations

Attachments:
    1.    Certificate of Service
    2.    EEOC Form 573, "Notice of Appeal/Petition" (Complainant and Complainant's Representative, if an attorney)

## UNITED STATES POSTAL SERVICE
## EQUAL EMPLOYMENT OPPORTUNITY CASE
## IN THE MATTER OF

### BEVERELY L. WRIGHT

### AGENCY CASE NO. 4K-210-0133-99

### CERTIFICATE OF SERVICE

I hereby certify that the Final Agency Decision has been sent by certified mail on this date to:

**COMPLAINANT'S REPRESENTATIVE:**

CHARLES FINEBLOOM ESQ.          <u>**Certified Mail No. 7099 3220 0006 8198 6736**</u>
10220 S DOLFIELD RD STE 201
OWINGS MILLS MD 21117-3624

A copy of the Final Agency Decision was sent by regular mail to:

**COMPLAINANT**

BEVERLY L. WRIGHT
204 MARLEY STATION RD
GLEN BURNIE MD 21060-7713

MGR EEO DISPUTE RESOLUTION
BALTIMORE DISTRICT
U S POSTAL SERVICE
900 E FAYETTE ST RM 395
BALTIMORE MD 21233-9411

<u>January 19, 2001</u>
Date

OFFICE OF EEO COMPLIANCE AND APPEALS
U S POSTAL SERVICE
CAPITAL METRO OPERATIONS
P O BOX 1730
ASHBURN VA  20146-1730