IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BEVERLY LEWIS WRIGHT      *

         Plaintiff      *

                         *      Civil No.: AMD02-4181

vs.      *

JOHN E. POTTER, Postmaster General,      *
U.S. Postal Service

         Defendant      *

     *     *     *     *     *     *     *     *     *

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Beverly Lewis Wright, Plaintiff herein, by her undersigned attorney, hereby submits this response to the Defendant's Motion to Dismiss, or, in the alternative, for Summary Judgment.

Plaintiff is in agreement, initially, with the Defendant's (A) "factual background", as stated in the Defendant's Memorandum of Law in Support of it's Motion to Dismiss.

Plaintiff is also in agreement with the Defendant's (B) "Procedural History", as stated in its Motion.

With regard to Defendant's (A) "Argument", Defendant alleges that Plaintiff's claims of failure to provide reasonable accommodation and the wrongful termination must be dismissed because she failed to exhaust her administrative remedies. The Plaintiff respectfully alleges that there is a factual dispute that exists with regard to the question of her exhaustion of her administrative remedies. As such, as a dispute exists, Defendant's Motion to Dismiss or Request for Summary Judgment on this issue must fail.

Plaintiff alleges that she did, in proper person, exhaust her administrative remedies prior to bringing this claim in Federal District Court. Plaintiff started her employment with the USPS in 1984 and worked in the Lutherville/Timonium, Maryland Post Office from 1986 until 2000. Until August, 1998, she was able to perform the essential functions of her distribution clerk position. On August 26, 1998, Dr. King found the Plaintiff fit for light duty and sedentary work. Plaintiff, between January and June of 1999, suffered a worsening of her condition, such that, in June 1999, she was unable to do productive work with the USPS. She took sick leave from February 15, 1999 through March 10, 1999, due to her multiple sclerosis. She was later, on April 13, 1999, told that she was not to report to work any more. She did report to work, and on June 11, 1999, she requested leave pursuant to FMLA requesting leave from June 11, 1999 through January 6, 2000. This request for FMLA Leave was granted. Plaintiff was then found to be totally disabled and unfit for duty and was placed on sick leave. She was found not to be a qualified disabled individual as contemplated by the Rehabilitation Act of 1973. On July 7, 1999, the Plaintiff applied for disability retirement. It was approved and was effective on October 1, 2000.

On or about April 9, 1999, the Plaintiff contacted an EEO Counselor complaining about the discrimination. Plaintiff and Defendant agree that her work hours were cut to only working two hours per day from February to July, 1999. Pursuant to the spirit of the equal employment opportunity law, the Plaintiff did make a timely complaint pursuant to 29CFR Sect.1614.105A1. Her allegations of discrimination were continuous and ongoing actually from well before that date until well after that date, when she was forced to file for a disability retirement and was terminated in October 2000. Her complaints to the EEO Counselor were that she was discriminated against the cause of

2

her disability, and her work hours were reduced from 8 hours per day to 2 hours per day for no justifiable reason. That she was told not to come back to work. In addition, she filed complaints through her Shop Steward. Further, Plaintiff filed formal complaints with the EEOC and after a rejection at that level filed an appeal from the final agency decision of the EEOC.

She filed a formal complaint in June, 1999. Plaintiff submits that this discriminatory behavior she alleged by the Post Office was continuous and ongoing and did last until her medical disability retirement in October, 2000. As far as exhausting her administrative remedies goes, she continuously made complained to her superiors, doing what she thought was appropriate to officially file her complaints, and she reported these violations to an EEO counselor as promptly as possible, considering the numerous violations she felt were being imposed on her at work. As a result, investigations were commenced. The investigations commenced on October 28, 1999 and were completed in March, 2000. The Plaintiff was notified of the results of the investigation and then a supplemental investigation was conducted. The supplemental investigation was complete on October 13, 2000. Following that the USPS conducted and issued a final agency decision in this matter. Following the final agency decision, the Plaintiff then filed an appeal to the US EEOC of that decision. The appeal also affirmed the final agency decision. The Plaintiff, during the time she was unrepresented, and after the time she became represented by counsel, did everything in her power to proceed appropriately and did exhaust her administrative remedies. Further, the plaintiff, through the American Postal Worker's Union, the AFL-CIO, filed for an Arbitration with the Post Office. This also in an indication of the steps that the Plaintiff undertook to exhaust her administrative remedies.

3

II.    The Defendant states in its (B) of the Argument that the Plaintiff has failed to set forth a *prima facie* case of discrimination.

As outlined in *McDonald Douglas Corp vs. Green*, 411 US 792 (1973), the plaintiff must demonstrate firstly a *prima facie* case of discrimination. If the Plaintiff can establish a *prima facie* case, combined with sufficient evidence that the employer's alleged justification is false, the trier of fact may conclude that the employer unlawfully discriminated. *Reeves vs. Sanderson Plumbing Products, Inc.*, 530 US 133, (2000).

The Defendant concedes that the Plaintiff has a disability. The Defendant contests the fact that the Plaintiff was qualified for her position. The Plaintiff at all times has asserted that she could perform the essential functions of her distribution clerk position with or without a reasonable accommodation. This is supported by her doctor's general opinion that the Plaintiff could perform manual activities such as letter sorting when seated". In August, 1998, the Plaintiff applied for light duty and was approved allowing her to do sedentary work, no use of machinery and with a chair for her back support. In October, 1998, she was given a temporary light duty assignment. In January, 1999, her work hours were reduced from 8 hours per day to 2 hours per day and then ultimately to (0) hours. In the Plaintiff's Arbitration Case against the USPS, the Arbitrator found that when the USPS reduced her work hours to zero, "her questionable operational reasons" exceeds a deserving light duty employee contractual mandate. The Arbitrator found that the light duty work definitely did not "dry up" as the Post Office alleged. The Arbitrator found that local management did not want her to work any longer in its various operational claims were simply a pre-text to achieve that end. The Arbitrator was not persuaded that the Postal Service did not have enough light duty work for her to perform. A copy of the Arbitration Panel Decision is attached hereto.

4

If it is accurate that the Plaintiff could perform light duty as she had been previously performing than Plaintiff could be considered a "qualified individual with a disability because she would have been able and was able to perform the core duties of her clerk position". While it may be accurate that some of the other concerns and duties might not have been well performed, it appears that, as stated, she could perform the core duties of her position and therefore would qualify as a "qualified individual with a disability". The Arbitrator's decision found that there was "no meaningful reduction in nixie-type work in the Post Office during the relevant time period, and that the light duty work did not dry up. This would support Plaintiff's contention that with the USPS did not have legitimate business reasons for its decision to reduce her hours, and that the USPS's articulated reasons were pretextual.

Plaintiff argues that her employers threatening her with arrest does constitute an adverse employment action. If we consider the incident under all the circumstances, the supervisor's statement that the USPS Police would be called was threatening enough and caused severe anxiety and produced a reaction on the part of the plaintiff to constitute an adverse employment action. As a result, the plaintiff did leave the premises, but only, as a result of the supervisor's actions.

III.    The Defendant alleges that the Plaintiff can not establish a *prima facie* case that she was wrongfully terminated. The Plaintiff has alleged that she was "forced into disability retirement". Plaintiff argues that her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. Defendant alleges that her retirement based on disability was entirely voluntary. However, Plaintiff has always alleged that she was coerced or forced to apply for disability retirement. Certainly the actions of the Post Office in reducing her hours from 8 per day to 2 per day

5

to Zero, the traumatic ordering her off the premises, by her supervisor, the fitness for duty examinations, justifiably led her to a conclusion that her days with the Post Office were coming to an end. She felt she was forced and really had no option but to apply for a disability retirement.

IV.    The Defendant argues that the Plaintiff could not meet her burden of establishing that the USPS failed to provide her with reasonable accommodation.

The record does indicate that the Plaintiff could and did perform the light duty requirements and sedentary work that the Post Office provided her with. So the Plaintiff has proven that a reasonable accommodation was possible. Plaintiff has shown that she could and did perform her essential job functions with accommodation. In August, 1998, Dr. King stated that the plaintiff could do sedentary work but that she could not operate machinery. The Arbitrator's decision again with the finding of the Arbitrator that the light duty work that she had been performing for 40 hours per week since October, 1998 did not "dry up".

CONCLUSION

For the foregoing reasons, the plaintiff asserts that she did exhaust her administrative remedies available to her; that she has established a *prima facie* case of discrimination under the rehabilitation act and has established that she was wrongfully terminated.

The Defendant has filed a Motion to Dismiss or, in the Alternative, a Motion for Summary Judgment. The Plaintiff has set forth issues which contain and contest the Defendant's assertions and plaintiff further alleges that these are factual issues. Plaintiff alleges that there exists in this case disputes of fact and as such these disputes of fact, concerning her exhaustion of administrative remedies, her claims of discrimination and

her claims of discrimination under the rehabilitation act that she was wrongfully

terminated and the reasonable accommodation claims inherently contain disputes of fact

which are not appropriate and should not be the subjects of a Motion for Summary

Judgment, but should be decided on the merits of her claim.

Respectfully submitted,

Charles A. Fineblum - #23650
10220 S. Dolfield Road - Suite 201
Owings Mills, Maryland 21117
(410) 356-1368

Attorney for Plaintiff

CERTIFICATION OF SERVICE

I HEREBY CERTIFY that on this ___10___ day of ___Sep T.___, 2003, a
copy of the foregoing was forwarded to: John W. Sippel, Jr., Esquire, Assistant US
Attorney, Bar No. 25484, 6625 United States Courthouse, 101 W. Lombard Street
Baltimore, Maryland 21201.

Charles A. Fineblum - #23650

7