Regular Arbitration Panel

| | |
|---|---|
| In the Matter of Arbitration ) | |
| between ) | Grievant: Beverly L. Wright |
| United States Postal Service ) | Post Office: Lutherville, MD |
| and ) | USPS Case No: K98C-4K-C 99141943 |
| American Postal Workers Union, ) | APWU Case No: K98C4KC991 |
| AFL-CIO ) | |

Before: Laurence M. Evans, Arbitrator

Appearances:

   For the Postal Service: Victoria J. Vedral

   For the Union: Ron Borsella

Place of Hearing: 900 E. Fayette St., Baltimore, MD

Date of Hearing: June 27, 2002

Date of Award: July 10, 2002

Relevant Contract Provisions: Article 13; ELM, 355.14

Contract Year: 1998-2000

Type of Grievance: Contract—Light duty

### Award Summary

The evidence established that local management failed to meet its Article 13 obligation to "aid and assist [a] deserving" light duty employee with multiple sclerosis who had 24 years of postal experience. That local management had certain operational issues to deal with did not justify reducing the Grievant's light duty work hours to zero, particularly since a variety of light duty work was available.

I. **Statement of the Case**

Because the Grievant, at all relevant times a full-time clerk with approximately 24 years of postal experience, had been diagnosed as having multiple sclerosis and had been having related physical difficulties, she applied for light duty under Article 13 of the National Agreement. Her application for light duty was approved on August 26, 1998, with

1

the following restriction: "Sedentary work—no use of machinery—needs chair with back support." For reasons that are unexplained in the record, the Grievant apparently was not given a temporary light duty assignment until October 1998. At that time, she was put on an eight (8) hour per day, 40 hour per week schedule primarily performing nixie and mark-up mail duties. She performed that assignment for several months before local management began, in January 1999, to gradually reduce her work hours from eight (8) per day to two (2) per day and then ultimately to no hours.[1] On February 13, 1999, the Union filed a Step 1 grievance challenging local management's decision to reduce the Grievant's work hours from eight (8) to none.

The thrust of the Union's position is that under Article 13, Section 1.B, local management failed, with respect to the Grievant's condition, to honor its contractual commitment to "aid and assist deserving full-time regular...employees who through illness or injury are unable to perform their regularly assigned duties...." According to the Union, the Grievant did not "deserve" to have her work hours cut to zero after January 1, 1999, particularly since there was plenty of nixie and other sedentary office work in Lutherville that could be performed. The Union points out that no witness was able to say that there was no work that could have been performed by the Grievant. The fact that the Lutherville Post Office had to find work hours for other "limited" duty employees was, the Union argues, a management pretext for reducing the Grievant's hours to zero. In this regard, the Union advances the theory, based on statements and testimony of local management officials, that management were not pleased with the quality or the speed of the Grievant's nixie work. Thus, the Union argues that management acted in bad faith in relying on the ELM, Section 355.14 as its justification for reducing the Grievant's work hours. Section 355.14 of the ELM provides, as follows:

> The light duty provisions of the various collective bargaining agreements between the U.S. Postal Service and the postal unions do not guarantee any employee who is on a light duty assignment any number of hours of work per day or per week.

---

[1] At this point, the Grievant began to use her accumulated sick and annual leave. In late April 2000, she was granted a disability retirement.

2

Since the Grievant has been granted a disability retirement, as a remedy, the Union asks only that all of the annual and sick leave the Grievant used subsequent to January 1999 to make-up for her loss of work hours be restored to her leave accounts.

The Postal Service's view of this case is different. It maintains that despite the undisputed fact that is has no obligation to give a light duty employee, like the Grievant, any work hours at all under the ELM, it found a way to give her 40 hours per week from October 1998 to some time in January 1999. Thereafter, it had to reduce her work hours for legitimate operational considerations. Those operational considerations arose from the fact that, in October 1998, it had to move a bar code sorter machine to another facility and then, in early 1999, it again had to send another machine (FSM) to another facility. As a consequence of these actions, Lutherville had a surplus of employees, some of whom were later "excessed." With more employees than work, some of the work previously given to the Grievant now had to be given to Lutherville's "surplus" employees. In addition, the Postal Service points out that Lutherville had at least three (3) limited duty employees who had to be given a certain amount of work as required by law.[2] These employees, like the "surplus" employees, all legitimately took work hours that the Grievant would have otherwise worked.

Contrary to the position taken by the Union, the Postal Service insists that it did "aid and assist" a "deserving" employee by keeping her gainfully employed for a long period of time. It points to Article 13, Section 3.C which incorporates the concept that light duty work will be assigned consistent with "good business practices." Because it met all of its contractual and regulatory obligations, the Postal Service requests that the grievance be denied in its entirety.

II. **The Issues**

Did the Postal Service violate Article 13 of the National Agreement when it reduced

---

[2] Management also asserted that it wanted to, and did, use window clerks on "down time" to process "nixie" mail.

3

the Grievant's light duty work hours from eight (8) per day ultimately to no hours each day beginning in or about January 1999? If so, what is the appropriate remedy?

### III.  Analysis & Opinion

Both sides have presented persuasive arguments in support of their respective positions. However, upon carefully reviewing the entire record in this matter, I find, based on the particular circumstances here, that local management violated Article 13, Section 1.B of the National Agreement when it reduced the Grievant's work hours to zero beginning around February or March 1999, the exact time being unknown. In the circumstances present here, as long as local management was attempting in good faith to provide work hours to the Grievant, it satisfied its "aid and assist" obligation under Article 13. But when it reduced her hours to zero, for questionable operational reasons, it ceased complying with its "aid and assist a deserving light duty employee" contractual mandate.

The evidence establishes that there was no meaningful reduction in "nixie-type" work in Lutherville during the relevant time period; the light duty work the Grievant had been performing 40 hours per week since October 1998 definitely did not "dry-up." The Postal Service's claim that the October 1998 removal and relocation of the bar code sorter machine had a negative impact on the Grievant's hours is dubious because after that machine was taken out she continued to work a full-time schedule for at least two (2) months before her hours were gradually reduced to zero. I gather also that during this period, management was able to accommodate the work needs of limited duty employees F. Arndt and B. Champney (and various window clerks) without the need to reduce the Grievant's hours to zero. When the second machine was removed and relocated in February 1999, limited duty employee R. Simpson, who had worked on this machine, was given new duties but none involved work the Grievant had been performing. I fully understand that with surplus employees there was likely a legitimate operational need to reduce the Grievant's work hours from eight (8) to four (4) and even arguably to two (2), but there is nothing in the record which persuades me that her hours had to be reduced to zero, particularly since there was no demonstrated reduction in "nixie-type" work.

4

Given the testimony about the Grievant's ability, or lack thereof, to perform the "nixie-type" work timely or accurately (although the Postal Service disavowed and denied in its closing argument that the Grievant's "productivity" was a factor in the case), I am inclined to agree with the Union that local management did not want her to work any longer and its various operational claims were simply a pretext to achieve that end. The Postal Service is correct that under the ELM, Section 355.14, it has no obligation to guarantee any light duty employee any work hours, but this provision cannot reasonably be construed as allowing local management to avoid its agreed-upon light duty obligations set forth in Article 13 as well as those locally negotiated agreements under Article 30, Items 15, 16 and 17. Not being required to guarantee work hours to a light duty employee is one (understandable) thing; arbitrarily reducing or eliminating a "deserving" employee's negotiated entitlement to light duty work is quite another.

The Postal Service has not persuaded me that it did not have enough light duty work for the Grievant to perform. I do not see that the "no guarantee" language of the ELM, Section 355.14 suffices as an absolute justification for reducing the Grievant's work hours to zero, particularly since there had been, and still was, work that the Grievant could perform. When it ultimately denied the Grievant any more work in the instant circumstances, local management arbitrarily stopped "aiding and assisting a deserving light duty employee" in contravention of its Article 13 commitments. I therefore find that the Postal Service violated Article 13 of the National Agreement, as alleged.

An appropriate remedy is set forth below.

IV.   **The Remedy**

I am not granting the Union's requested remedy in its entirety.[3] Instead, I am directing the Postal Service to restore to the Grievant's annual and sick leave accounts <u>all</u> the annual leave and sick she used from the time her hours were reduced <u>essentially and pre-</u>

---

[3] For those periods of time where the Grievant was given a reasonable amount of work, I am not in a position to substitute my judgment for that of local management's as to exactly how many hours she could have