IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BEVERLY LEWIS WRIGHT, :
    Plaintiff :
:
v. : Civil No. AMD 02-4181
:
JOHN E. POTTER, POSTMASTER :
GENERAL, :
    Defendant :

...o0o...

MEMORANDUM OPINION

Plaintiff, Beverly Lewis Wright ("Wright"), formerly a post office distribution clerk, brought this action against her former employer, the United States Postal Service ("USPS"). Wright's complaint, construed broadly, raises a claim for employment discrimination based on disability under the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, *et seq.*, and constructive discharge in violation of the Rehabilitation Act. Wright contends that she was discriminated against because of her disability (Multiple Sclerosis) when USPS allegedly (1) failed to provide her with reasonable accommodation for her disability; (2) restricted her to a two-hour work day from February through July 1999; (3) threatened her with arrest; and (4) forced her into disability retirement. Now pending is USPS's motion to dismiss and for summary judgment. The issues have been fully briefed and no hearing is necessary. For the reasons set forth below, I shall grant defendant's motion.

I.

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is material for purposes of summary judgment, if, when applied to the substantive law, it affects the outcome of the litigation. *Id*. at 248. Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson*, 477 U.S. at 248-49. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Celotex Corp.*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252; *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). Of course, the facts, as well as justifiable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). The court, however, has an affirmative obligation to prevent factually unsupported claims and defenses from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

II.

The facts are undisputed. Wright obtained employment with USPS in 1984 and worked as a distribution clerk in the Lutherville/Timonium, Maryland Post Office from 1986-2000. Def. Ex. 1, ¶2 (Declaration of Michael Orsini, Postmaster of the Lutherville/Timonium Post Office). Raymond Smith was Wright's first line supervisor at all times. *Id*. at ¶5. Sometime after she was hired, Wright was diagnosed with multiple sclerosis. USPS has been aware of her condition at all times material to this case. *Id*. at ¶3.

Wright performed the essential functions of her distribution clerk position without any accommodation until August 1998. *Id*. The parties agree that a distribution clerk's essential functions are to: (1) breakdown[1] All Purpose Containers ("APCs") and Bulk Mail Containers ("BMCs") of mail and carry the mail trays (weighing 23 to 35 pounds) for approximately five feet to a distribution case; (2) empty APCs (weighing 209 to 235 pounds without mail, and up to 1,000 pounds with mail); (3) empty BMCs (weighing 475 pounds without mail); (4) distribute mail to carrier routes (USPS's goal is 2270 letters per hour); (5) push loaded APCs and BMCs to various locations; (6) breakdown APC and BMC containers of parcels and place them into 48 carrier hampers (parcels weigh up to 70 pounds); (7) spread trays of letters and flats to the 48 letter cases; and (8) push rolling equipment to transport mail. *Id*. at ¶4.

---

[1]To "breakdown" means to lift trays filled with mail from the All Purpose Containers and Bulk Mail Containers and place in an area for someone else to sort. Def. Ex. 1, ¶2 (Declaration of Michael Orsini, Postmaster of the Lutherville/Timonium Post Office).

On August 5, 1998, after observing Wright experience difficulty walking and fall while on the job, Smith requested that Wright submit to a fitness for duty ("FFD") exam. *Id.* at ¶5. Marcia Kane, M. D., conducted the exam on August 26, 1998, and found that Wright could only perform light sedentary work. *Id*. Dr. Kane recommended that Wright avoid using machinery and that she be provided a chair with back support. USPS followed these restrictions and assigned Wright to light duty work.[2] Wright's light duty responsibilities included placing a stamp on undeliverable mail, checking a box to indicate the reason it was undeliverable, and repairing torn mail. These duties were not part of a funded vacant position. *Id*. at ¶6.

In early 1999, mail processing in the Lutherville/Timonium Post Office was terminated and the workload at the post office dropped considerably. *Id*. at ¶7. This resulted in a reduction of light duty hours and the reassignment of four employees between February and April 1999.[3] *Id*. Based on her seniority, Wright was not reassigned but clerical workers

---

[2]Light duty is a formal reduction in duties for employees who sustain non-job-related injuries or illnesses. USPS defines light duty as duty requiring less exertion than regular duties. Under Article 13 of the postal workers' collective bargaining agreement, a USPS employee who is injured off the job and who has at least five years of USPS service is eligible for permanent assignment to light duty. Light duty assignments are provided at the management's discretion depending on USPS needs and can be temporary or permanent. Light duty requests must be accompanied by a medical certificate giving full evidence of the physical condition of the employee, the need for reassignment, and the ability of the employee to perform other duties. USPS is not required to create work to accommodate employees with non-job-related injuries or illnesses. Def. Ex. 1, ¶6, n. 2 (Declaration of Michael Orsini).

[3]The following employees were reassigned: Michael Bendos, Distribution Clerk (February 1999); Mary Ann Dembowski, Mail Processor (March 1999); Gloria Hones, Distribution/Window Clerk (March 1999); and, Paul Cho, Window Clerk (April 1999). *Id*. at ¶7

with down time absorbed most of her work. Her work hours were reduced to two hours per day and on at least one occasion she was given no work hours. *Id*.

On June 11, 1999, Wright requested, and was granted, leave through January 6, 2000, pursuant to the Family Medical Leave Act. Def. Ex. 1, ¶9. On June 16, 1999, Wright submitted a request to the Baltimore medical unit for permanent light duty. *Id*. at ¶10. Dr. Kane found Wright to be totally disabled as of June 16, 1999, and mandated that Wright "clear" through the medical unit before returning to work. *Id*. Wright did not challenge Dr. Kane's determination. *Id*. at ¶11.

Subsequently, USPS placed Wright on sick leave pending a review by the USPS Reasonable Accommodation Committee ("RAC").[4] The RAC examined Wright's medical documentation, analyzed her essential job functions, and reviewed her nomination form and official personnel file. The RAC determined that Wright's job restrictions were permanent The RAC also concluded that Wright could not be accommodated by eliminating the non-essential functions of the position. *Id*. at ¶12.

On July 7, 1999, Wright applied for disability retirement. Her application was approved and became effective on October 1, 2000.

On or about June 29, 1999, Wright filed a formal Equal Employment Opportunity (EEO) complaint that included her claim of disability discrimination under the Rehabilitation

---

[4]RAC is a multi-disciplinary fact finding committee comprised of eight members including Postmaster Orsini as well as representatives from operations, personnel, medical, safely, labor relations, injury compensation, and workplace intervention.

Act. Def. Ex. 4. On January 19, 2001, the USPS issued a Final Agency Decision ("FAD") dismissing Wright's administrative complaint. Def. Ex. 6. Wright filed an appeal with the EEO's Office of Federal Operations ("OFO") and on September 25, 2002, the OFO affirmed the FAD. *Id*. Subsequently, Wright filed her complaint in this court.

III.

As a preliminary matter, USPS has moved to dismiss on the grounds that some of Wright's allegations are time-barred under the relevant EEO regulations. Additionally, USPS argues that Wright's wrongful termination claim is not cognizable because Wright failed to raise it in her EEO complaint.

A. *Time-barred Claims*

Wright brings her suit for discrimination under the Rehabilitation Act of 1973. Prior to seeking relief for discrimination under the Rehabilitation Act, a federal employee must timely exhaust all available administrative remedies. *See Long v. Ringling Bros.-Barnum & Bailey Combined Shows, Inc.*, 9 F.3d 340, 343 (4th Cir. 1993); *Spence v. Straw*, 54 F.3d 196 (3rd Cir. 1995). To exhaust her administrative remedies with respect to her discrimination claims, Wright was required to initiate contact with an EEO counselor within 45 days of any alleged discriminatory act. 29 C.F.R. § 1614.105. In her claim in this court, Wright requests relief for the reduction in her work hours between January 1999 and June 1999. However, Wright did not meet with an EEO counselor until April 9, 1999. Thus, only those acts occurring after February 23, 1999, may serve as the basis for relief.

Wright argues that USPS's discriminatory acts were "continuous and ongoing" and are subject to review under the continuing violation doctrine. However, each reduction in Wright's work schedule constituted a discrete act on the part of USPS. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Courts are prohibited from invoking the continuing violation doctrine to rule on time-barred discrete discriminatory acts "even when they are related to acts alleged in timely filed charges." *Id.* at 113. Thus, only those incidents occurring prior to February 23, 1999, are actionable.[5]

B.  *Failure to Exhaust Remedies*

Wright also alleges that she was wrongfully discharged when she applied for, and was granted, disability retirement. She argues that she was "forced" to retire. Compl. at ¶4. USPS responds that Wright did not properly exhaust her administrative remedies because the wrongful discharge claim was not raised in her EEO complaint. However, unlike Wright's claims regarding the reduction in her hours, her constructive discharge claim is not based on a discrete act; instead, the constructive discharge claim is logically and causally related to the overall hostile environment described in her initial EEO complaint.

Wright's complaint is only limited "by the scope of the investigation which could reasonably have been anticipated to have grown out of the administrative charge." *Dachman v. Shalala*, 46 F. Supp. 2d 419, 434 (D. Md.. 1999) (citing *Chisholm v. United States Postal*

---

[5]I will consider the earlier incidents as "relevant background evidence" in reviewing the timely filed claims. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 112 (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977)).

*Serv.*, 665 F.2d 482, 491 (4th Cir. 1981). "Courts may only exercise jurisdiction over claims encompassed within the [EEO] charge and claims 'like or related to allegations contained in the charge, or which grow out of such allegations.'" *Id.* at 344 (citing *Riley v. Technical and Mgmt. Serv. Corp.*, 872 F. Supp. 1454, 1459 (D. Md.. 1995)). Wright's EEO complaint alleges that USPS discriminated against her when it reduced her work hours; forced her to use sick leave and then annual leave to compensate for the loss of work; required her to submit to an FFD exam in March 1999; counted every piece of mail she processed; forced her to go home on May 12, 1999, and May 24, 1999; and required her to submit to a second FFD exam after reviewing Wright's request for Family Medical Leave. Def. Ex. 5 at 2 (Partial Acceptance/Partial Dismissal of Formal EEO Complaint). Wright alleges that these actions ultimately *forced* her to apply for disability retirement on July 7, 1999, and, thus, constituted wrongful discharge. Her discharge claim is related to, and indeed arises out of these allegations which were considered by the EEO. Thus, her administrative remedies with respect to the wrongful discharge claim were exhausted and are dismissed.

IV.

I turn now to the merits of the remaining claims.

A.  *Disability Discrimination Under the Rehabilitation Act*

The Rehabilitation Act prohibits discrimination against an otherwise qualified individual with a disability on the basis of such disability by any program or activity that receives federal funding. 29 U.S.C. § 794(a); *see also Estate of Alcalde v. Deaton Speciality*

*Hosp. Home, Inc.*, 133 F. Supp. 2d 702, 707 (D. Md.. 2001).   The standards used to determine whether the Rehabilitation Act has been violated are those applied under Title I of the American with Disabilities Act. 29 U.S.C. § 794 (d); *see Myers v. Hose*, 50 F.3d 278, 281 (4th Cir. 1995); *Bissell v. Reno*, 74 F. Supp.2d 521, 527 (D. Md.. 1999).

Where an employee alleges discrimination but lacks direct evidence, the court must apply the three-part scheme described in *McDonnell Douglas Corp. v. Greene*, 411 U.S. 792 (1973). First, a plaintiff must establish a prima facie case of discrimination. *Id*. at 802. Second, if a plaintiff makes such a showing, an inference of discrimination arises that may be rebutted with evidence of legitimate, non-discriminatory reasons for the adverse employment action. *Id.* Finally, if the defendant successfully rebuts the inference, plaintiff must prove by a preponderance of the evidence that the employer's proffered reasons for the adverse employment decision are pretextual. *Id*. at 804.

The prima facie case of discrimination under the Rehabilitation Act demands that Wright show (1) that she has a disability; (2) that she is otherwise qualified for the job; and (3) that she has suffered an adverse employment action because of her disability. *Doe v. Univ. of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995); *Tyndall v. Nat'l Educ. Cntrs.,* 31 F.3d 209 (4th Cir. 1994). USPS stipulates for the purposes of the pending motion that Wright is disabled. Therefore, all that remains for Wright to establish is that she is a qualified individual and that she has suffered an adverse employment decision because of her disability.

1. *Qualified Individual*

The Rehabilitation Act's protections are limited to "qualified individuals." A qualified individual with a disability is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Thus, to establish that she is a qualified individual with a disability, Wright must demonstrate that she can perform the essential functions of her position; and if not, whether any reasonable accommodation by the USPS would enable her to perform those functions. *See Tyndall*, 31 F.3d at 213.

Although Wright alleges in her complaint that she can perform her duties without accommodation, it is clear from the record that the opposite is true. The parties agree that the essential functions of a distribution clerk require mobility and the ability to move USPS equipment. Def. Ex. 1, ¶4. Wright has been restricted to light duty *sedentary* work since August 26, 1998. By June 1999, Dr. Kane found Wright to be totally disabled and unable to work at all. The RAC evaluation completed on December 28, 1999, confirmed that Wright was no longer capable of performing even light duty work because of her "spasticity" causing a reduction of fine manipulation and an eye condition making it difficult to read and sort mail. *Id.* at ¶13. Thus, it is clear that Wright is not a qualified individual who can perform her duties without accommodation.

Similarly, *reasonable* accommodation will not enable Wright to perform the essential functions of her position. Wright bears the ultimate burden of proof on the issue of

reasonableness of an accommodation. *Bryant v. Better Bus. Bureau of Greater Maryland, Inc.*, 923 F. Supp. 720, 723 (D. Md.. 1996) (citing *Tyndall,* 31 F.3d at 213). Wright suggested several means of accommodation to the RAC that she argued, and continues to argue, would allow her to perform the essential functions of her position. She suggested that she be allowed to use a scooter to carry trays of mail and for general mobility; use postal equipment for stability when pushing trays to their destination; push parcels on the floor with her scooter; and obtain co-worker assistance to get her scooter in and of her car and to lift trays of mail. Def. Ex. 1, ¶12.

Wright's requests that she be allowed to use a scooter to move mail trays and obtain co-worker assistance to lift the trays would eliminate essential job functions, and are, therefore unreasonable. *Champ v. Baltimore County*, 884 F. Supp 991 (D. Md. 1995) (citing *Hall v. U.S. Postal Serv.*, 857 F.2d 1073, 1079 (6th Cir. 1988))("An accommodation is unreasonable if it requires . . . elimination of an essential job function."). *See also Gilbert v. Frank*, 949 F.2d 637, 642 (2nd Cir. 1991). Furthermore, the RAC determined that the use of postal equipment for stability presented a danger to Wright and other employees should she lose control of the heavy equipment. *See Champ* at 998 (D. Md. 1995) ("An individual is not otherwise qualified if he poses a direct threat to the health or safety of others because of his disability that reasonable accommodation can not eliminate.").

Wright has failed to project evidence that she is a qualified individual and the reasonableness of potential accommodations and has not met the second prong of the prima

facie case of disability discrimination. *See Bryant*, 923 F. Supp. at 733.

### 2. *Adverse Employment Decision*

A plaintiff who alleges disability discrimination also bears the burden of demonstrating that she suffered an adverse employment decision because of her disability. *Baucom v. Potter*, 225 F. Supp. 2d 586 (D. Md. 2002). Wright alleges that she suffered the following specific adverse employment decisions: (1) her workday was reduced from eight to two (and sometimes zero) hours; (2) she was told to leave the USPS or she would be escorted off the premises by USPS police; and (3) she was forced to go on disability retirement. Wright must demonstrate that each aforementioned action was adverse to her employment and that the actions were undertaken because of her disability.

Ultimate employment decisions related to hiring, discharging, promoting, granting leave, and compensating may constitute adverse employment actions. *See Von Gunten v. State of Maryland*, 243 F.3d 858, 865 (4th Cir. 2001). Indeed, any decision that has a negative effect on the "terms, conditions, or benefits" of employment will constitute an adverse employment action. *See id*. It is undisputed that providing Wright with only two work hours a day was an adverse employment decision. Similarly, to the extent Wright can prove that she was forced to take disability retirement, Wright experienced an adverse employment decision.

Wright also claims that she suffered an adverse employment decision when she was "threatened with arrest" on April 14, 1999. Pl. Resp. at 5. The record reveals that on April

13, 1999, Smith told Wright by phone not to report to work on the following day because no light duty work would be available. Def. Ex. 2. Nonetheless, Wright appeared at work on April 14 without explanation. *Id*. Smith asked her to leave and informed her that if she did not depart, he would call Postal Police and have her escorted off of the premises. *Id*. Wright then departed and the Postal Police were not called. *Id*. Wright was called into duty the following night. *Id*.

The adverse employment action that Wright experienced was not Smith's order that Wright leave the premises. Rather, the adverse employment action occurred when she was not provided with work on April 14, which was an adverse action in the same vein as the earlier reduction in hours. Instead, Smith's request that Wright not remain on post office grounds when she was not scheduled for duty did not effect her employment terms and conditions. That this is true is demonstrated by the fact that she was allowed to return to work the following day. *See Allen v. Rumsfeld*, 273 F. Supp. 2d at 706. Thus, the alleged threat was more akin to a reprimand for which Wright suffered no employment consequences. *See id.* (stating reprimands do not constitute adverse employment actions).

3. *Discriminatory Purpose*

I next turn to consider whether the adverse employment actions were undertaken by USPS for discriminatory purposes.

USPS proffers legitimate non-discriminatory reasons for reducing Wright's work hours. In early 1999, USPS stopped mail processing in the Lutherville/Timonium Post

Office which significantly reduced the workload. Clerical employees absorbed most of the light duty workload. USPS identifies this as the reason that it reduced Wright's hours. USPS's contention is bolstered by uncontroverted evidence that USPS was forced to reassign four other employees as a result of the workload reduction.

To rebut USPS's assertion, Wright must prove by a preponderance of the evidence that USPS's articulated reasons were pretextual. *Id.* at 709. Wright has failed to do so. The only evidence Wright offers in her reply is a decision from a labor arbitrator related to Wright's grievance over the reduction of her hours to zero in 1999, allegedly in violation of the collective bargaining agreement between Wright's union and USPS. Notwithstanding Wright's limited success as to her the labor claim, I am constrained to agree with the USPS's contention that the arbitrator's determination is, by itself, insufficient as a matter of law to generate an issue as to pretext. The arbitrator was charged with determining whether the collective bargaining agreement was violated; he was not tasked to determine whether Wright was discriminated against under the Rehabilitation Act. Manifestly, the collective bargaining agreement imposes different standards on an employer from the standards applicable under the non-discrimination/reasonable accommodation provisions of the Rehabilitation Act. Moreover, the arbitrator found, in any event, that "there was likely a legitimate operational need to reduce [Wright's] work hours from eight (8) to four (4) and even arguably to two (2)," although he was not persuaded that a reduction of hours to zero was justified. Thus, even by its terms, the arbitrator's decision provides no comfort to

Wright. As a matter of law, therefore, USPS has offered legitimate non-discriminatory reasons for reducing Wright's work hours in early 1999, and Wright has failed to provide any probative factual support to rebut this evidence. Thus, USPS is entitled to summary judgment as to this claim.

B. *Constructive Discharge*

Wright's complaint also includes a claim for wrongful termination, which is how she characterizes the circumstances leading to her decision to file for disability retirement. Her allegation ultimately amounts to a claim for constructive discharge.

Constructive discharge results "when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Nichols v. Harford County Bd. of Educ.*, 189 F. Supp. 2d 325, 345 (D. Md. 2002) (citing *Nye v. Roberts,* 159 F. Supp. 2d 207, 214 (D. Md. 2001)). To make a successful claim for constructive discharge, a plaintiff must prove (1) intolerability of working conditions; and (2) deliberateness of employer's action. *Id*. The Fourth Circuit has set a high standard for constructive discharge claims. *See, e.g., Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 472 (4th Cir. 2002).

Wright's complaint suggests that intolerable work conditions were created when USPS eliminated her work hours, ordered her off of the premises, and conducted an FFD examination. Compl. ¶6. Together, these actions led Wright to believe that "her days with the Post Office were coming to an end." Pl. Reply at 4.

Based on the present record, Wright's claim for constructive discharge fails because Wright cannot establish deliberateness on the part of USPS. *See Bristow v. Daily Press, Inc.*, 770 F.2d. 1251, 1255 (4th Cir. 1985)(citing *EEOC v. Federal Reserve Bank of Richmond*, 698 F.2d 633, 672 (4th Cir.1983), *rev'd on other grounds,* 467 U.S. 867 (1984)). The Fourth Circuit requires proof of "an employer's specific intent to force an employee to leave." *Id*. Intent can be inferred from circumstantial evidence. *Id*. (citing *Nye* at 214).

Wright has not offered evidence suggesting USPS had any specific intent to force her to leave its employ. Wright was subjected to an FFD examination only after she was observed to be experiencing symptoms of her disability in ways that were effecting her ability to perform her job. Wright's work hours were reduced because the workload at the post office had dropped off. Wright was asked to leave the premises because she had been told previously not to report to duty. Wright does not dispute these facts with any evidence suggesting that USPS took these actions intending to force Wright to retire. Rather, USPS took these actions in recognition that Wright was restricted to light sedentary work and could not accommodate her work restrictions with full time employ.

Ultimately, the unrebutted medical evidence demonstrates that as of June 1999, Wright was totally disabled and unable to work. This confirms that Wright applied for disability retirement for medical reasons and not because of the intolerable work conditions created by USPS. She was given the opportunity to return to work subject to being "cleared" through the medical unit. Wright did not and does not refute Dr. Kane's medical evaluation.

Thus, Wright has failed to allege facts sufficient to support a prima facie case of constructive discharge.

V.

For the reasons set forth above, USPS's motion for summary judgment shall be granted. An order follows.


Filed: October 27, 2003                                  _____/s/_____
                                                          Andre M. Davis
                                                          United States District Judge